RAY CUMMINGS, (PLAINTIFF) RESPONDENT, v. UNION QUARRY AND CONSTRUCTION COMPANY, A CORPORATION, (DEFENDANT) APPELLANT.—87 S. W. (2d) 1039.

St. Louis Court of Appeals.   Opinion filed December 3, 1935.

*Fordyce, White, Mayne & Williams, E. C. Hartman* and *G. C. Stribling* for appellant.

*Foristel, Mudd, Blair & Habenicht* for respondent.

BENNICK, C.—This is an action for damages for personal injuries sustained by plaintiff, Ray Cummings, while engaged in the performance of a contract independently entered into between him and defendant, Union Quarry and Construction Company. Tried to a jury, a verdict was returned in plaintiff's favor for the sum of $1,250; and defendant's appeal from the judgment entered on the verdict has followed in the usual course.

Defendant's business, as its name would imply, was that of quarrying and selling rock which it obtained from its quarry located at Marcus and Natural Bridge Avenues in the City of St. Louis. As a part of its equipment it had a derrick or mast some 40 feet in height, which was held in its upright position by steel cables extending from the derrick out to and slightly beyond the outer edges of the quarry, where they were secured to the top of the quarry walls by being attached to rods set in a concrete base and so constructed as to permit either the lengthening or shortening of the cables by turning the mechanism at the top of the rods through which the cables ran. Being of steel, and because of their constant exposure to the weather, it was necessary that the cables be greased about every two years to avoid rust; and it was a such task that plaintiff was engaged when injured, his work being done pursuant to a contract with defendant by the terms of which plaintiff had agreed to complete the job for a fixed price, free from any direction or control on defendant's part save as to the final result of the work.

Before beginning the work, plaintiff not only made some casual inspection of the cables on his own account, but inasmuch as the derrick had but recently been moved so as to necessitate a readjust-

ment of the lengths of its several supporting cables, he also inquired repeatedly of defendant's superintendent about the condition of the fastenings, and was in each instance assured that they were secure. Under plaintiff's evidence, such assurance of safety extended particularly to the cable upon which he was working while injured, plaintiff having made special inquiry about the condition of such cable when, in the course of his movements around the premises, he had observed that it had been spliced some 20 or 30 feet out from the quarry wall, with the ends held together and secured by a series of metal clamps.

While plaintiff was suspended from such cable in his basket or chair at a point about 90 feet out from the derrick and 100 feet or so above the bottom of the quarry, he felt the cable begin to slip, and momentarily thereafter it came entirely loose from its attachments, swinging and twisting inwards and carrying plaintiff along with it in a course which threatened to cause him to crash against the quarry wall. To escape such fate he undertook to slide down the cable as it curled and fell; and fortunately he was successful in saving himself, finally landing at the bottom of the quarry with injuries which, while painful, luckily consisted of nothing more serious than burns and scratches upon his hands and legs.

As regards the cause of the accident, plaintiff himself testified that a subsequent investigation revealed that the cable had slipped apart at the point where the spliced ends had been clamped together, while the superintendent testified that a break had occurred at the thimble or point in the mechanism where the cable was fastened to the rod inserted in the ground. The superintendent further admitted that the cable had but recently been subjected to a very heavy strain while the derrick was being moved; and that after the derrick had been set up in its new position and the splicing of the cable accomplished, he had inspected the equipment, but not in such a manner as to test the cable's strength.

In his petition plaintiff charged negligence generally, alleging that the quarry and its equipment were the property and in charge of defendant, and that his contract with defendant was limited to the greasing and painting of the cables, and did not include general repair work thereon nor examination thereof, particularly with reference to the attachments and fasteners.

The answer was a general denial, coupled with a plea that plaintiff's remedy, if any, was under the local compensation law, and that he was not entitled to maintain this action at common law against defendant.

Upon the issues as thus joined the case came on for trial; and now defendant assails the judgment which went against it upon the grounds of the alleged insufficiency of the whole evidence to have

made a case for the jury and of error assigned to the giving of plaintiff's principal instruction covering his theory of the case.

As the chief consideration for its claim that the demurrer to the evidence should have been sustained, defendant argues that plaintiff, though concededly an independent contractor, was nevertheless injured while on its premises and engaged in work which should properly be characterized as an operation of its usual business conducted on such premises, so that under Section 3308(a), Revised Statutes 1929 (Mo. St. Ann., Sec. 3308(a), p. 3242), his exclusive remedy was under the compensation law and not at common law, any rights he might have otherwise had at common law having been supplanted and superseded by the compensation law if applicable to the case.

That the act is wholly substitutional in character is not to be denied (De May v. Liberty Foundry Co., 327 Mo. 495, 37 S. W. (2d) 640); nor is it any longer open to question but that under Section 3308(a), *supra*, any person who has work done under contract on or about his premises, which is an operation of the usual business which he there carries on, is to be regarded as a statutory employer of such contractor, and as such liable to him for compensation for an injury received by him on or about the employer's premises while doing work which was in the usual course of the employer's business. [Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 769; Meyer v. Adams (Mo. App.), 50 S. W. (2d) 744; Simpson v. New Madrid Stave Co., 227 Mo. App. 331, 52 S. W. (2d) 615.]

Obviously, therefore, the point for our decision must turn wholly upon the question of whether plaintiff, when injured, was doing work which was a part of the operation of defendant's usual business. If so, his rights are to be determined exclusively by the compensation law, if not, he is to be relegated to the common law for the remedy which he now asserts in this action.

Now Section 3308(a) undoubtedly serves a very useful purpose in the scheme of compensation, the idea in its enactment being to prevent the employer, in the case of accidents occurring on or about his premises in the course of the operation of his usual and accustomed business, to escape his just liability therefor, either under the act or at common law, by the fiction of contracting independently with persons without financial responsibility. [De Lonjay v. Hartford Accident & Indemnity Co., 225 Mo. App. 35, 35 S. W. (2d) 911.] Consequently, under circumstances disclosing that the injury was received by one on or about the employer's premises while doing work which was in the usual course of the employer's business, the defense of independent contractor does not lie in a compensation proceeding; but on the other hand, if the work being done by the independent contractor, instead of being a part of the operation of

the employer's usual business, was only incidental, ancillary, or auxiliary thereto, then the case is not one for compensation and any remedy of the injured man must be found to lie exclusively at common law. [Crane v. Peach Brothers, 106 Conn. 110, 137 Atl. 15; Corbett's Case, 270 Mass. 162, 170 N. E. 56; Holbrook v. Olympia Hotel Co., 200 Mich. 597, 166 N. W. 876; American Radiator Co. v. Franzen, 81 Colo. 161, 254 Pac. 160; Zugg v. J. & J. Cunningham, Ltd., 1 B. W. C. C. 257; 71 C. J. 490.]

In this case, the undisputed facts show that defendant's usual business was that of quarrying and selling rock, and that while it was indeed necessary that the cables used in the work be painted and greased at intervals of two years, still defendant had no regular employee for such task, but instead regarded the same as a specialty job for the doing of which it contracted independently with some outside person such as plaintiff whenever the necessity for the doing of the work arose. Under such circumstances, in the light of reason and the precedents set by other jurisdictions, we must hold that plaintiff, when injured, was not engaged in any part of defendant's usual business within the contemplation of Section 3308(a) which would control if the case were one for compensation, and that consequently his cause of action is wholly and exclusively one for the common law to adjudicate.

Defendant argues, however, that it was in any event free from liability to plaintiff at common law; that the only duty it owed at common law to plaintiff as an independent contractor was limited and restricted to that it would have owed any invitee, namely, to warn him of any dangers which were known to defendant and not to plaintiff, and not to willfully or wantonly injure him; and that under the circumstances of the case, since the work upon the cable was obviously dangerous, defendant is not to be held liable to plaintiff for injuries resulting from a condition which plaintiff knew as well to be dangerous as did defendant.

As a general proposition the rule as argued for by defendant is well enough stated, though it does fail to take into consideration the whole situation of the relationship existing between contractor and contractee, and in such respect affords but a partial view of what the full duty of the contractee towards his contractor may be.

Defendant admits the doctrine (though its denies its application), that notwithstanding the work of the owner of the premises may be independently contracted for, yet if the owner undertakes to furnish the place where and the appliances with which his independent contractor is to perform his contract, and all the while retains possession and control over said place and appliances, then the independent contractor has the same right as an ordinary servant and employee to demand of the owner that due care be exercised by him to the

end that such place and appliances may be made reasonably safe for the purposes for which they are furnished. [Jewell v. Kansas City Bolt & Nut Co., 245 Mo. 720, 151 S. W. 966; Jewell v. Kansas City Bolt & Nut Co., 231 Mo. 176, 132 S. W. 703; Roddy v. Missouri Pac. Ry. Co., 104 Mo. 234, 15 S. W. 1112; 39 C. J. 1328.]

In this instance, while it is true that plaintiff did himself furnish certain of his equipment for the work, yet the cables and their attachments were supplied by and at all times retained under the control of defendant, and we think, therefore, that there can be no serious doubt but that when defendant contracted with plaintiff to suspend himself from such cables while engaged in the performance of the work called for by the contract, it became obligated to him to use care commensurate with the danger to which he was to be subjected to see to it that the cables would be so secured and fastened as to afford him a reasonable measure of safety while employed about his work. In other words, defendant's duty to plaintiff in respect to the furnishing of reasonably safe cables for the latter's use was not measurably different from that it would have owed an ordinary employee who might have been selected for the work, and upon proof of defendant's negligence proximately resulting in plaintiff's injury the latter's right of recovery is not to be held measurably less than that which would have been available to an ordinary employee if injured under the same or similar circumstances.

Here plaintiff had pleaded general negligence only, or, as all counsel seem to agree, had founded his case upon the doctrine of *res ipsa loquitur* as presently understood and extended, relying upon the fact that the cables and their attachments were under the management and control of defendant; that the breaking or coming loose of the cable was not such an occurrence as would have ordinarily happened if defendant had exercised due care to have had the cable made reasonably safe for the use to which it was to be put; and that defendant, having recently moved and reattached the cable, and having retained the control over the matter of its attachment, had superior knowledge or means of information as to the precise cause of the occurrence.

In support of such theory plaintiff showed facts and circumstances fairly warranting an inference of negligence on defendant's part, though he may not be said to have gone to the length of proving the specific cause of the accident so as to have excluded the application of the doctrine upon which he rests his case. By this we mean that while the accident, absent defendant's negligence, was one that could not well have happened, yet upon the whole record its specific cause is still in doubt. Plaintiff himself counted upon the fact that the cable had slipped apart at the point where its ends had been spliced together, but why it had slipped apart at that point his evidence did

not purport to show. Whether the clamps used by defendant were defective in their structure or manner of attachment were matters reposing peculiarly within defendant's knowledge or power of ascertainment, and were not matters equally within the opportunity of plaintiff to have discovered. So we think that such an inference of defendant's negligence was legitimately warranted as to have carried the case beyond the demurrer to the evidence; and we need do no more than mention that there was no plea of contributory negligence in the case, nor is plaintiff to be held to have assumed the risk of any injury resulting from defendant's negligence.

This brings us then to the question of alleged error in the giving of plaintiff's instruction No. 1, to which defendant devotes considerable attention in its brief. The instruction is long, though perhaps unavoidably so, but regardless of its length we think that in fairness to all parties it should be set out herewith in its entirety, as follows:

"The Court instructs the jury that if you find from the evidence that at the times mentioned in evidence the defendant was engaged in the operation of a stone quarry at Marcus and Natural Bridge avenue, in the City of St. Louis, Missouri, and that the usual business which defendant carried on there was limited to quarrying, crushing, and grinding of stone and rock, and that on and prior to March 23, 1932, the plaintiff was exercising, and for a long time theretofore had been exercising and engaged in the calling or occupation of greasing and painting quarry guy wires on a job basis as an independent calling or occupation, and that about March 23, 1932, or shortly prior thereto, the plaintiff submitted a written bid and proposal to the defendant whereby plaintiff offered to grease and paint the guy wires of defendant's quarry for the stipulated price and consideration of $77.00, and that defendant accepted said proposal, and that pursuant thereto, on or about said March 23, 1932, the plaintiff and defendant contracted and agreed together that the plaintiff would do said work of greasing and painting the guy wires in defendant's said quarry on a job basis for the price and consideration of $77.00, and that plaintiff was to be under no regulation as to how said work should be performed and was to be free to use whatever means and manner he desired in doing said work, and that defendant was not to have the right of direction or control of plaintiff in said work, and that defendant was to pay him the said sum of $77.00 as full consideration for the doing of said work; and if you further find from the evidence that the work of painting and greasing said guy wires was not incidental to or an operation of the usual business of the defendant, and that it was in the nature of maintenance of said equipment of defendant's quarry, but that said agreement was limited to the greasing and painting of said wires

and did not include general repair thereon or inspection or examination of the attachments and fasteners thereof;

"And if you further find from the evidence that in carrying out said work it was necessary for plaintiff to sit in a saddle attached to and suspended from the guy wire in said quarry, and that this necessity and method was known to defendant at and prior to the time of the making of the aforesaid agreement, and that before commencing said work under said agreement the plaintiff inquired as to the condition of the ties and clamps of said cables, and that defendant, through its manager and superintendent in charge of said quarry, if you do so find, informed and assured the plaintiff at said time that said cables were securely fastened and in good condition, and if you further find from the evidence that thereafter, on March 23, 1932, the plaintiff, pursuant to the aforesaid agreement entered upon the performance of the aforesaid contract, and that while he was engaged in so doing he was sitting in a saddle attached to one of defendant's cables running to the northwest corner of and suspended over said quarry, and that said cable, wires, and the clamps and fasteners thereof were in the complete and exclusive charge and control of defendant, and that while plaintiff was so engaged and suspended, as aforesaid, if you do so find, said guy wire suddenly became unfastened, separated, and untied at the top of the quarry, and that plaintiff was thereby caused to be swung over said quarry and against the side thereof and to slide down said cable, if you so find, and that bodily injuries were thereby caused plaintiff; and if you further find from the evidence that said guy wire became unfastened, separated, and untied and caused said injuries to plaintiff all as a direct and proximate result of negligence of the defendant, if you do so find, and that said happening was not caused by the plaintiff, then the Court instructs you that the plaintiff is entitled to recover and that your verdict must be in favor of plaintiff and against defendant."

In the final analysis, defendant's objections to the instruction are largely but a restatement of the points made before,—that the instruction predicated a recovery by plaintiff upon a finding of facts which, instead of excluding the case from the application of the compensation law, impliedly and necessarily assumed that plaintiff, when injured, was engaged in work which was a part of the operation of defendant's usual business; and further, that the instruction did not require the jury to find a state of facts indicating negligence on the part of defendant. What defendant seems to have in mind under its latter point is that the instruction contemplated the exercise by it of a greater duty to plaintiff than the law imposed upon it, and that the instruction went beyond the fair scope of a *res ipsa loquitur* case, and ignored the possibility of evidence on defendant's

part of a character to have exculpated it from liability for the accident.

To reiterate all that we have said before in connection with the demurrer to the evidence would serve no useful purpose, and it should suffice now to say that if we are correct in holding that a case was made for the jury, then the instruction in question, in the light of the objections made to it, could not be held to have contained reversible error, its several hypotheses having included all of the necessary elements of plaintiff's cause of action at common law, both as regards the avoidance of the compensation act and also as regards his right to recover in this action, notwithstanding his admitted status as an independent contractor. Plaintiff does not pride himself upon the absolute perfection of his instruction in the matter of form and length, but he does insist, to which we agree, that it fairly followed the evidence and submitted no element unsupported by the evidence, and that in any event it contained nothing prejudicial to defendant's rights. Indeed, some of defendant's present objections to the instruction would seem to come largely as afterthoughts in view of the fact that in the trial of the case it sought no further charge to the jury upon the merits of the case proper, but was content to rest the case with the jury for whatever guidance they might receive from plaintiff's instruction No. 1.

The judgment rendered by the Circuit Court should therefore be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the Circuit Court is, accordingly, affirmed. *Hostetter, P. J.,* and *McCullen, J.,* concur. *Becker, J.,* not sitting.