**CHANDLER v. KATZ DRUG CO.**

No. 12280.

Circuit Court of Appeals, Eighth Circuit.

Oct. 28, 1942.

Walter W. Calvin, of Kansas City, Mo. (Calvin & Kimbrell, Bert S. Kimbrell, and McKay A. Cox, all of Kansas City, Mo., on the brief), for appellant.

Lawrence R. Brown, of Kansas City, Mo. (Roy B. Thomson, Paul R. Stinson, and Ryland, Stinson, Mag & Thomson, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The questions presented by this appeal, which is from a judgment for the defend-

**1008**

ant in a personal injury action, are: (1) Was the evidence of the plaintiff (appellant) sufficient to make a prima facie case? (2) Was the plaintiff an employee of the defendant (appellee) within the meaning of the Missouri Workmen's Compensation Act?[1]

The plaintiff, who was a representative of the Dorothy Perkins Company, a maker of cosmetics, on August 14, 1940, while working in a retail drug store of the defendant in Kansas City, Missouri, had her left hand burned by an electrical discharge from a cash register upon which she was attempting to "ring up" a sale. She brought this action to recover damages for her injuries, asserting that they were caused by the negligence of the defendant. The defendant denied liability and asserted that the plaintiff could not maintain the action because she was an employee of the defendant within the meaning of the Workmen's Compensation Act of Missouri.

Upon the trial, evidence was received upon three issues: (1) Negligence; (2) damages; and (3) the relationship of the plaintiff to the defendant with respect to her services.

To establish negligence, the plaintiff relied upon the doctrine of res ipsa loquitur. She had alleged in her complaint that the cash register, its electrical connections, and the means for producing and transmitting the electrical current were within the exclusive control of the defendant. She proved the happening of the accident and her injuries as alleged in her complaint. She did not prove that the means of producing the electrical current or the means of transmitting it to defendant's store were under the defendant's control, nor did she produce any evidence to show that the accident might not have been caused by a sudden and dangerous increase in the voltage of the electrical current, for which increase the defendant was not responsible and which it was without power to control.

At the close of the plaintiff's case and at the close of all of the evidence, the defendant, which had offered no explanation as to the cause of the accident, moved for a directed verdict on the grounds (1) that the plaintiff's evidence failed to show that the defendant was negligent, and (2) that the evidence showed that the parties were both subject to the Workmen's Compensation Act of Missouri. There being no dispute as to the evidentiary facts, the parties agreed to waive a jury, and the case was submitted to the court. The court decided that the doctrine of res ipsa loquitur was inapplicable, and found in favor of the defendant. The court did not decide whether the plaintiff was an employee of the defendant under the terms of the Workmen's Compensation Act of Missouri.

The plaintiff contends that in finding that the defendant was not negligent, the court erred, because the doctrine of res ipsa loquitur was applicable. The defendant contends that the judgment appealed from is right not only because the doctrine of res ipsa loquitur was inapplicable, but also because the plaintiff was an employee of the defendant under the Workmen's Compensation Act of Missouri, and her sole remedy was under that Act.

Since it is conceded that the plaintiff could not maintain this action if she was an employee of the defendant within the meaning of the Workmen's Compensation Act of Missouri, it is necessary to determine first whether she was such an employee.

The plaintiff had specialized in the sale of cosmetics. She had been employed and trained by the Dorothy Perkins Company to act as a demonstrator of its products in the chain drug stores owned and operated by the defendant. After she had received her training, she was assigned to the defendant's stores under a written contract which had been entered into by the defendant and the Dorothy Perkins Company on April 18, 1938, effective May 1, 1938. The purpose of this agreement was to promote the sale of "Dorothy Perkins toiletries" in Katz drug stores designated by the defendant. The contract contained the following pertinent provisions:

"Traveling Demonstrator.

"Effective May 1st and continuing during the entire period of this contract, Dorothy Perkins Company will assign a 'travelling demonstrator' to the Katz Drug Company, whose duties it will be to rotate all the stores of Katz Drug Company for the purpose of educating Katz toilet goods salespeople in the sale of Dorothy Perkins toiletries and also to devote her personal efforts in the stores to the sale of same. It is expressly understood the traveling demonstrator will be rotated and scheduled

[1] Chapter 29, Rev.Stat.Mo.1939, § 3689 et seq. Mo.R.S.A. § 3689 et seq.

to all stores of Katz Drug Company at the discretion of the latter.

"Payment of Demonstrators.

"Dorothy Perkins Company will pay Katz Drug Company each month the salaries of the demonstrators assigned to Dorothy Perkins. To this actual salary there will be added the social security tax and also the bonus paid to these Dorothy Perkins demonstrators as the result of their participation in the Katz bonus plan. Each demonstrator is given each week a definite quota on Dorothy Perkins above which she is paid 5% of retail or any other percentage which may change, subject to Katz Drug Company's discretion.

"Should there be any change in the basic salary rates of Dorothy Perkins demonstrators, the salary obligation of the manufacturer will be changed accordingly with the condition that the manufacturer's salary obligation in no way is to exceed the basic rate of $80 per month per demonstrator. Any exceptions to this are to be approved by the Dorothy Perkins Company."

The contract also provided that Dorothy Perkins merchandise should be billed to the defendant at certain percentages of the retail price, with certain discounts; that the Dorothy Perkins Company would pay to the defendant "a sum of 5% of retail value which the Katz Drug Company will pay to all toilet goods salespeople as a bonus for the sale of these special promotional items;" that the expense of advertising Dorothy Perkins products was to be borne in part by the defendant and in part by the Dorothy Perkins Company; that the Dorothy Perkins toiletries would not be sold in other chain store outlets in Kansas City, Missouri, with certain exceptions; and that the defendant would maintain a prominent display of such toiletries. By the terms of the contract, both parties were given the right to cancel on sixty days' notice, and the defendant reserved the right "to make any changes whatsoever in the stores in which Dorothy Perkins demonstrations are assigned."

The plaintiff became the "travelling demonstrator" whose duty it was "to rotate all the stores of Katz Drug Company for the purpose of educating Katz toilet goods salespeople in the sale of Dorothy Perkins toiletries and also to devote her personal efforts in the stores to the sale of same." The plaintiff was employed by the Dorothy Perkins Company, was paid her salary by that company, and was assigned to work in the Katz drug stores. The substance of the plaintiff's testimony relative to her work was as follows: that the Dorothy Perkins Company fixed her hours as forty-eight a week and determined the amount of her salary; that she made weekly reports of her sales of Dorothy Perkins products to that company and received letters from its sales promotion department relative to her work; that, when she first went to work at the Katz drug stores, she worked shorter hours than the defendant's regular employees; that she did not punch the clock or wear a Katz uniform; that she occasionally worked overtime to further the sale of merchandise, and later took time off to offset the overtime she had worked; that no one other than the Dorothy Perkins Company instructed her how to sell merchandise, but that she would comply with reasonable requests made by the Katz management; that during all the time she was with the Dorothy Perkins Company her work was confined to the Katz drug stores; that her traveling expenses were paid by the Dorothy Perkins Company, and she was obliged to obtain the consent of that company to go from a store in one town to a store in another town; that she knew that she was to promote sales in the Katz stores under an arrangement whereby the Dorothy Perkins Company had agreed to furnish the services of a demonstrator to the defendant; that the merchandise which she sold and the proceeds of such merchandise belonged to the defendant; that it was a part of her duties to instruct the employees of the defendant in the sale of cosmetics; that she waited on the cosmetics trade at the cosmetics counter in the drug store in suit and sold to customers products other than those of the Dorothy Perkins Company; that she would sell a product of that company if she could, but, if she could not, she would sell whatever the customer wanted; that the sale of cosmetics was an important part of the usual business of the defendant; that she worked her forty-eight hours a week at the cosmetic counter at times designated by the management of the defendant; that when she sold products which were manufactured under the defendant's name, she received the same ten per cent bonus which was allowed by the defendant to its employees for making similar sales; that after she was injured she continued to work for some time at the Katz stores; and that she received the compensation to which she was entitled

under the Missouri Workmen's Compensation Act from the compensation insurer of the Dorothy Perkins Company.

The pertinent parts of the Workmen's Compensation Act of Missouri are Secs. 3695(a), 3697 and 3698(a), Rev.Stat. Missouri 1939, Mo.R.S.A. §§ 3695(a), 3697, 3698(a). Sec. 3695(a) provides that "the word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, * * *." Sec. 3697 provides that "if the injury or death occurs while the employee is in the joint service of two or more employers, their liability shall be ·joint and several, and the employee may hold any or all of such employers." Sec. 3698(a) provides that "any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

The plaintiff contends that she was not an "employee" of the defendant, for the reason that the defendant did not have complete control of the manner in which she did her work, and she also contends that the contract under which she was assigned to work for the defendant was merely a contract for the sale of goods, and not for the performance of services. The second contention is untenable, since the contract between the defendant and the Perkins Company shows that the latter was to furnish to the defendant the services of a travelling demonstrator, and the contract related not only to the sale of merchandise to the defendant, but provided, in effect, for a joint undertaking to promote the sale of Dorothy Perkins products in the defendant's stores, for the benefit of both parties to the contract. The services rendered by the plaintiff were in furtherance of this joint undertaking.

■ We think it is unnecessary and undesirable for this court to attempt to determine with exactness within which classification of "employees," as defined in the Workmen's Compensation Act of Missouri, the plaintiff would fall. It is conceivable that, since the defendant relinquished no rights with respect to the management of its business and the plaintiff received and acted upon the defendant's reasonable directions and suggestions relative to the performance of her work, the courts of Missouri would decide that she was rendering to the defendant a sufficiently "controllable service" to make her an "employee" of the defendant under Sec. 3695 (a). See Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 1006, 1007, 82 S.W.2d 909, 912, and compare Pruitt v. Harker, 328 Mo. 1200, 1209, 1210, 43 S.W.2d 769, 772, 773. It might, we think, reasonably be ruled, under the circumstances disclosed by the evidence, that she was injured while in the joint service of two employers, who together had complete control over the performance of her services (compare, Maltz v. Jackoway-Katz Cap Co., supra, pages 916-918 of 82 S.W.2d, and Lee v. Oreon E. and R. G. Scott Realty Co., Mo.App., 96 S.W.2d 652, 653), and was therefore an employee of both under Sec. 3697. But if she was not an "employee" of the defendant under either Sec. 3695(a) or Sec. 3697, the defendant was to be deemed her employer under Sec. 3698(a), since her work was done under a contract, upon the defendant's premises, in the operation of the usual business there carried on, and she was injured on the premises of the defendant while doing such work. Pruitt v. Harker, supra, page 771 of 43 S.W.2d; Cummings v. Union Quarry & Construction Co., 231 Mo.App. 1224, 87 S.W.2d 1039; Bunner v. Patti, 343 Mo. 274, 288, 121 S.W.2d 153, 159. It is also to be noted that, under the law of Missouri, an employee, who, with his consent, is transferred by his employer to serve another, becomes the "employee" of the person to whom he is transferred. Lee v. Oreon E. & R. G. Scott Realty Co., Mo.App., supra, page 653 of 96 S.W.2d; Simmons v. Kansas City Jockey Club, 334 Mo. 99, 107, 108, 66 S.W.2d 119, 122, and cases cited.

■ Our conclusion is that the plaintiff was an "employee" of the defendant within the meaning of the Workmen's Compensation Act of Missouri, and that therefore she is precluded from maintaining this action. For that reason, the judgment is affirmed.