Willie Mary MURPHY, Widow, and John Edward Murphy, Richard Malcolm Murphy, Charles Allen Murphy, Anna Marie Murphy, George Dale Murphy, Jerome Donald Murphy, Melvin Eugene Murphy, Elizabeth Murphy, Margaret Murphy and Katherine Murphy, Minor Children and All Dependents of Lee Murphy, Deceased, Claimants-Appellants,

v.

KINGSLAND INVESTMENT COMPANY, a Corporation, Employer-Respondent,

and

Zurich Insurance Company, a Corporation, Insurer-Respondent.

No. 51380.

Supreme Court of Missouri, Division No. 2.

March 14, 1966.

Hubert I. Binowitz, St. Louis, for claimants-appellants.

F. X. Cleary, Paul S. Brown, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondents.

BARRETT, Commissioner.

In their amended claim under the Workmen's Compensation Act, Willie Mary Murphy and her ten minor children sought an award of $16,500 (RSMo 1959 Supp. § 287.-240, V.A.M.S.) for the accidental death of her husband and their father, Lee Murphy, on July 9, 1962. In the language of the claim Mr. Murphy was "working on hanging scaffold, supported by weights on roof of building, when one end of the scaffold came loose" and he fell forty feet onto a concrete alley. He was working on a three-story, six-family apartment building at 1231 Hamilton Avenue, owned one half by Kingsland Investment Company and one half by P & M Bank Investment and Realty Company, and at the time managed by the

latter's brokerage department, the Preston Bank Realty Company. Kingsland admittedly and for the purposes of this opinion all owners were minor employers under the act. The Industrial Commission in affirming on review an award by a workmen's compensation referee found that Lee Murphy was not a statutory employee of the Kingsland Investment Company (including in effect its co-owner or manager) and specifically that "he falls within the exclusionary provisions of § 287.040(3)," insofar as material here: "3. The provisions of this section shall not apply to the owner of premises upon which improvements are being * * * *repaired by an independent contractor* * * *." The circuit court affirmed the award and upon this appeal by the dependent claimants the *sole* question is whether "there was not sufficient competent evidence in the record to warrant the making of the award." RSMo 1959, § 287.490, subd. 1(4); Johnson v. Simpson Oil Company, Mo.App., 394 S.W. 2d 91, 93.

■ The parties have briefed and argued two principal points or theories, one under what may be designated as the affirmative provision of the statute, whether at the time of the occurrence Mr. Murphy was, in the appellant's language, "performing a function which was in the usual course of the owner's business." The language of the statute is: "1. Any person who has work done under contract on or about his premises which is an operation of the *usual business which he there carries on* shall be deemed an employer * * *." RSMo 1959, § 287.040(1). Typical cases turning on the construction and application of this particular provision are Kennedy v. J. D. Carson Co., Mo.App., 149 S.W.2d 424; Rucker v. Blanke Baer Extract & Preserving Co., Mo.App., 162 S.W.2d 345; Cummings v. Union Quarry & Const. Co., 231 Mo.App. 1224, 87 S.W.2d 1039; Viselli v. Missouri Theatre Bldg. Corp., 361 Mo. 280, 234 S.W.2d 563. The other and perhaps negative or exclusionary theory is whether, as the commission found, Mr. Murphy

at the time of the fatal accident was engaged, again in the language of the appellant's brief, in "a *maintenance function,* and *not* in the function of * * * *repair,"* a paraphrase of the above quoted third paragraph of the statutory provision. It is not deemed necessary to a disposition of this appeal to consider the first point and determine whether the work Mr. Murphy was doing was an operation of the usual business of the owners. This appeal may be disposed of under the narrower point of whether Mr. Murphy was engaged in a "maintenance function," compensable under the act, or whether owners' improvements were being "repaired" by him as an independent contractor, not compensable under the act. And, as with the determination of whether particular work is in the usual course of an employer's business, there is no general test or formula for determining whether particular work is "maintenance" or "repair," each case presents its own peculiar difficulties and must be determined upon its particular circumstances. Viselli v. Missouri Theatre Bldg. Corp., 361 Mo. 1. c. 284, 234 S.W.2d 1. c. 566.

In this background of rules and statutes the evidence was that Kingsland's office is at 815 Chestnut Street and its primary business is the purchase of real property for resale for the obvious basic purpose of making a profit. The location of Preston Bank Realty or its affiliate was not established but both consist of Mr. Preston Bank of Creve Coeur who had no employee except sharing a janitor with Kingsland. Preston Bank Realty had managed the 1231 Hamilton property for two years and its function was to collect rent and take care of complaints of tenants. A representative of Kingsland and Mr. Bank both visited the property to observe the work in progress but they exercised no supervision over Mr. Murphy or those working for him. Kingsland had three employees, a bookkeeper, a secretary, and at the apartment building the shared janitor, but the janitor did no painting and no concrete work. Neither of the owners of the building own any tools

or equipment for concrete work or for painting, including a scaffold. Over the years Murphy had done several jobs on other properties for these owners but he did not do all of their work, they often let jobs by competitive bidding and sometimes employed other contractors or builders who specialized in the type of work necessary to improve property to attract buyers or renters or simply to maintain and preserve the buildings. There were many more details as to the nature of the respondents' business and their various activities, as to the particular property involved here and numerous other matters, but they need not be set forth here.

Lee Murphy was also known as L. C. Cobbs and transacted his business as "L. C. Cobbs." His business letterhead reads:

"L. C. Cobbs
Contractor
Plastering-Tuckpointing-Brickwork-
Painting
5554 Cabanne Avenue
St. Louis 12, Mo."

Mrs. Murphy testified that her husband's occupation was "maintenance" which included "painting, papering, and painting" and she said that he was in business for himself and had been for nine years. She said that he owned a panel-body truck, four ladders, painting equipment, tuckpointing tools, concrete tools and a scaffold. She testified that her husband had employees working for him, Mr. Bursie and at least four of his adult sons. Mr. Murphy worked along with the men but he paid them all on an hourly basis but he was paid "(b)y the the job," not by hourly or daily wage, furnishing all tools and equipment.

There was a great deal of oral testimony as to the particular work Mr. Murphy was engaged in on July 9 but on June 7, 1962, he submitted to the respondents on his business letterhead this statement or proposal:

"For repairing all loose and broken concrete on porches and balconies and sidewalks at 1231 Hamilton, 1241 Hamilton, 5904 Julian and 1230-32-34 Oakley furnishing all labor for the sum of ........................ $300.00

"For painting exterior stucco masonry and windows at 1231 Hamilton, 1241 Hamilton, 5904 Julian, and balconies (front windows only) furnishing all equipment and labor for the sum of ........................ $750.00

(ALL PAINT TO BE FURNISHED BY OWNER)

    TOTAL JOB
      CONTRACT ....... $1050.00"

This written proposal was accepted by the owners and it was pursuant to the proposal that Mr. Murphy and his employees for about three weeks were engaged in doing the specified work on the four noted properties. On July 9 Mr. Murphy had mixed the paint and he and Bursie were "scaffolding up to paint." Murphy walked "out on the scaffold to tie it up" when "all of a sudden I saw the lookout pole kick up" and he was thrown headlong onto the concrete. They had painted most of the building and that day were going to paint its west side, including the windows, removing loose putty, pulling nails and re-puttying glass and nail holes.

The appellants have seized upon the fact that under the contract the respondents furnished the paint and that on July 9 Murphy was immediately engaged in the process of painting the west wall which they say is a compensable "maintenance function." It may be that in connection with buying, selling, renting and managing apartments or houses certain paint jobs would constitute "maintenance" as contrasted with "repair." Meyer v. Wells Realty & Inv. Co., Mo., 292 S.W. 17. And here apparently painting comprised the greater part of the work to be done but the argument ignores the fact that in addition to painting the proposal called "(f)or *repairing* all loose and broken concrete" on porches, balconies and sidewalks and they

had repaired and replaced concrete on stairways, porches and walks and Mr. Bank said, "There still was some concrete work to be done, yes." It is not necessary to elaborately set forth all the details and indicate the permissible inferences, the noted evidence and circumstances support the commission's finding that the work as an entirety constituted repairs by an independent contractor and therefore fell within the exclusionary provision of subsection 3 of the statute, § 287.040. While some of the cases involved "usual business" operations they furnish persuasive analogies for this conclusion. State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S.W.2d 838; Gholson v. Scott, Mo.App., 130 S.W.2d 216; Tokash v. General Baking Co., 349 Mo. 767, 163 S.W.2d 554; Rucker v. Blanke Baer Extract & Preserving Co., supra; Kennedy v. J. D. Carson Co., supra. Those in a sense were major repairs, requiring specialized skills of the sort the owners were not equipped to make and did not make—they were at least general repairs. 1 Larson, Workmen's Compensation Law, Sec. 49.12, p. 727.

The appellants' argument also ignores the fact of the commission's finding and the force of the award in favor of the respondents as indicated by the cases upon which they rely in which the awards were in favor of the claimants—as Kennedy v. J. D. Carson and Viselli v. Missouri Theatre Bldg. Corp., supra. And this is not to say that in no event could similar work in other circumstances not constitute "maintenance" or as to some employers become "an operation of the usual business" they may carry on, it is only to say that the briefly noted evidence is sufficient to illustrate that the commission's finding and award is supported—it is not clearly contrary to the overwhelming weight of the evidence—and therefore the judgment of the circuit court is affirmed. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 1166, 200 S.W.2d 55, 62;

Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.