JOHN WRIGHT, DECEASED, MRS. FLORA WRIGHT, WIDOW AND DELLA WRIGHT, DAUGHTER, RESPONDENTS, v. JOSEPH PIERSON, APPELLANT.—192 S. W. (2d) 519.

Springfield Court of Appeals. March Session, 1946.

1158

*Green & Green* for appellant.

*John M. Bragg* for respondent.

BLAIR, J.—This case, an action under the Workmen's Compensation Statute, seems to have had a rather unusual career. It was first assigned to the writer, and an opinion was written by him. A rehearing was afterwards granted. It was then transferred by agreement from this court at Springfield to this court, sitting at Poplar Bluff, and re-transferred from Poplar Bluff back to Springfield. It

was on the docket for the March, 1946, Session of this Court here at Springfield. It was again assigned to the writer for an opinion.

It is an action under the Workmen's Compensation Statute against Joseph Pierson, defendant, now appellant, by Mrs. Flora Wright and her daughter Della Wright, plaintiffs, now respondents, for the death of John Wright, husband of Flora Wright, and father of Della Wright, on June 23, 1942.

It is contended that John Wright was an employee of the defendant at the time of his death, and that defendant was a major employer, engaged in his usual occupation as a sawmill operator. The referee found for plaintiffs and the Workmen's Compensation Commission did likewise. On appeal to the Circuit Court of Douglas County, the award of the Commission was affirmed and, being unsuccessful in his efforts to set aside such judgment in the circuit court, the defendant has appealed to this court. The case is thus before us.

There was some evidence, at least by Louie Wright, that one Fleetwood was a major employer and, for the purposes of this case, we will so assume. John Wright was directly employed by Fleetwood. It is the contention of plaintiffs that Fleetwood was merely working for defendant Pierson, and was in fact a foreman for him, and that said John Wright was therefore an employee of defendant.

There are several things that must be shown by plaintiffs to authorize recovery, besides the assumed fact that Fleetwood was a major employer, that is, that he had more than ten employees regularly employed. [Section 3692 (a), R. S. Mo. 1939.]

First, it must be shown that deceased was an employee of defendant. It must also be shown that deceased was not only a regular employee of defendant, but that such alleged employer carried on his usual business for five and one-half days each week. It must also be shown that deceased was at the time of his death, in the employ even of Fleetwood.

The testimony of the only witness (Louie Wright) to the death of deceased sheds no light whatever on the relationship between Fleetwood and the defendant. Such relationship was fully discussed in our former opinion, from which we quote, without quotation marks on what we then said, as follows:

It appears from the uncontradicted evidence that John Wright was accidentally killed by the rolling over of a log, which said John Wright and his son Louie Wright, who was working in place of John Wright, were "snaking" or skidding to a place where such logs could be loaded on to a truck and later hauled to the sawmill.

Pierson, the appellant, denied before the referee that he was a major employer under the Workmen's Compensation Act, and denied that the relationship of employer and employee existed between appellant and said John Wright. If appellant was a major employer

and the relationship of employer and employee existed between appellant and said John Wright, such facts are most important in this case.

We will first consider the evidence before the Commission bearing on the question of whether or not John Wright was an employee of appellant, for, unless such relationship existed, under such evidence, there is no necessity of considering any other assignment of error made by appellant.

Frank Fleetwood's deposition, or the substance of same, is set out in appellant's abstract of the record. Fleetwood said: "My contract was, he was giving me $9.00 a thousand and the mill furnished. Mr. Pierson did not have any direction and control in the cutting of the timber. I was to provide all necessary means, labor and expense in doing so. The bank account was not started until the first of July (which apparently was after the death of Wright). Mr. Pierson loaned me $50 to start the account with. He had no other interest in the account. I was the only one who ever checked on it. I employed, directed and governed the men who assisted in the work. Mr. Pierson did not have anything whatever to do in directing the cutting and sawing of the timber." (Words in parenthesis ours.)

Fleetwood also said: "Under my agreement Mr. Pierson did not have any right or authority to either employ or discharge ony of the men assisting in the work. I gave Mr. Wright the contract to skid the logs at $1.50 per thousand. The way he took the job he was to put the logs where he could get to them with the truck and as long as he did this I had nothing more to say. I had no control over him when he worked, when he quit, who he employed or anything connected with the cutting of the timber. If he had worked by the hour he would have received thirty cents per hour. I furnished him with a team but was only paying him seventy-five cents a thousand."

On cross-examination Fleetwood testified as follows: "The agreement in the contract was that I would set the mill where I thought was best and start cutting the timber. I was to receive from Mr. Pierson $9 per thousand and I paid for all the labor. If the timber went over $9 a thousand, it was Pierson's profit. I sold the lumber to various people. The bank account was in the name of Pierson and Fleetwood. I added to the account by depositing other money."

He also further testified on cross-examination: "I was the only man that had to answer to Mr. Pierson and that was under the contract which I have told you about. I reported to Mr. Pierson two different times while the mill was being operated."

On re-direct examination, Fleetwood testified as follows: "I did not have anything to do or say under my agreement with Mr. Wright as to how or where he skidded the logs and what was a matter for him to decide. Mr. Wright had the right to employ anyone he desired but he was responsible for them himself."

On such re-direct examination Fleetwood also said, "I never at any time attempted to direct any of the men working under Mr. Wright or any of the other men who were cutting by the thousand," and also "The men working for Mr. Wright and Mr. Driskell were not working for me. They were working for them."

No other witness, except Fleetwood, undertook to detail the arrangement between Fleetwood and Pierson, or between Fleetwood and John Wright. Pierson owned the land and had one or more sawmills. Fleetwood undertook to clear the marketable logs off the land of Pierson, and moved one of Pierson's sawmills on to the land to a point chosen by Fleetwood for the purpose of sawing up the logs cut down on the land. Fleetwood was to get all under $9 a thousand for his own work and for the use of the sawmill.

Fleetwood was to hire all the men who did the work and every man employed on the sawmill job, including John Wright, was employed by Fleetwood. Most of the men worked by the hour or day. John Wright had a special arrangement with Fleetwood, whereby Fleetwood furnished him a team and paid Wright at that time 75 cents per thousand for all logs "snaked" out by him as they "scaled" at the sawmill.

Claimants must establish as a fact that they have a claim against Pierson under the Workmen's Compensation Act. In Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330, it was said at local citation of 39 S. W. (2d) page 332:

"In all cases cognizable by the Compensation Committee its jurisdiction is exclusive. Whether or not the case comes within the provisions of the act is a question of fact." [See also Crevisour v. Hendrix, 234 Mo. App. 1012, 136 S. W. (2d) 404, l. c. 412.]

We see nothing in the record tending in any wise to show that John Wright was an employee of Pierson. There is not a word of testimony in the record as to what the usual occupation of Pierson was. His usual occupation may have been entirely different.

Section 3698 (a), Revised Statutes Missouri 1939 (R. S. Ann.), was evidently passed for the purpose of preventing alleged contracts of employment from limiting the liability of real employers. It could not make a person liable under the act where there was a real contract. Gholson v. Scott et al., 130 S. W. (2d) 216, where it was said at l. c. 219:

"It has been definitely declared that the purpose of section 3308 (a) is to prevent an employer from avoiding liability for accidents occurring in the course of the operation of his usual business by resorting to the fiction of contracting for the doing of his work with persons without financial responsibility. In other words, said section does not place liability upon who has work different from that in which he is engaged, performed by another under a bona fide contract."

Such was the recent case of Green v. Shamrod, 185 S. W. (2d) 41. There the alleged contract was in furtherance of the usual course of the laundry business of the defendant, and such business was fully shown.

We think Pierson was not an employer of John Wright. Our Supreme Court in Sargent v. Clements, 88 S. W. (2d) 174, at 1. c. 177, has laid down the true rule as follows:

"We have laid down a general definition of an independent contractor to be 'one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work.'" (Citing many cases.)

Here Pierson had no direction whatever over John Wright. Wright was only responsible to Fleetwood for results of his work. Fleetwood contracted with Pierson to do certain work and Wright made a contract with Fleetwood to "snake" out the logs and put them in place where other employes of Fleetwood could get the logs and haul them to the sawmill. Wright was responsible to Fleetwood only for results and to Pierson not at all.

In their motion for rehearing, plaintiffs cited Meyer v. Adams et al., 50 S. W. (2d) 744. If plaintiffs were attempting to hold Fleetwood, that case might help plaintiffs somewhat, but we are unable to see how it is in any wise in point in a claim against defendant Pierson.

Even if it is assumed that Fleetwood was a regular employer and the employer of Wright, it is not shown that any one was employed even by Fleetwood for five and one-half days, or a week, as some of the authorities put it. It appears from the deposition of Fleetwood (the only witness on the point), that the sawmill was not in operation enough to make the owner of said mill (Pierson) a regular employer. Fleetwood said:

"Q. About how many men did you have working at the mill? A. Five.

"Q. About how many days a week would they average? A. About three and a half.

"Q. Was that about the average length of time the mill would run per week? A. Yes."

The testimony of Louie Wright tended to make the total number more than ten men.

It was not shown that deceased was even employed by Fleetwood, at any time, for five and a half consecutive work days, so as to make him a regular and not a casual employee. [Sec. 3695, R. S. Mo. 1939, Subdivision (d).]

In their motion for rehearing, plaintiffs contended that our original opinion was in direct conflict with Pruitt v. Harker, 328 Mo. 1200.

1164

In that case, Commissioner STURGIS, with the concurrence of the Judges of Division One, of our Supreme Court, said:

"Here the defendant was having work done under contract on or about her premises, to-wit, cutting and sawing her timber into lumber; and *this was an operation of the usual business which she there carried on.* In such case the defendant, as the one having the work done on her premises, is liable as employer to the employees of the contractor, though an independent one, when injured or killed on or about the premises of such employer *while doing work which is in the usual course of his business.*" (Emphasis ours.)

While that case was somewhat like the ·case at bar, it appears to have been definitely shown therein what the usual business of Mrs. Harker was and that she owned five sawmills operated on her own land.with a so-called independent operator of each sawmill.

And lastly, but by no means least, it was not shown that deceased was an employee, even of Fleetwood, *at the time of his death.* On examination by Referee Goodman, Louie Wright testified:

"I was working in his place and he was intending to come to town.

"REFEREE GOODMAN: Were you working together or taking his place?

"BY THE WITNESS: I was taking his place.

"REFEREE GOODMAN: He wasn't working with you on the occasion you were talking about now?

"BY THE WITNESS: No, not when he got killed."

Thus the evidence shows, that deceased was a mere volunteer, at the time he was killed, at least so far as defendant is concerned.

Our Legislature has seen fit to make a major employer engaged in his usual occupation, responsible for injury to or death of an employee, regardless of such employer's negligence. To make an employer liable under the statute, every element of the statute must be shown. This court has no right to extend the statute, and, unless claimants bring themselves squarely within the statute, they cannot recover from defendant.

It is useless to ask the Workmen's Compensation Commission to take further evidence in this case. Enough has been shown already to satisfy us that the claimants cannot possibly recover against defendant under the statute The judgment of the circuit court must be reversed, with directions to such circuit court to reverse the award of the Workmen's Compensation Commission.

It is so ordered. *Fulbright, P. J.,* concurs; *Vandeventer, J.,* concurs in the result.