Frank P. JOHNSON, Plaintiff-Appellant,

v.

SIMPSON OIL COMPANY, Inc., and Travelers Insurance Company, a corporation, Defendants-Respondents.

No. 8402.

Springfield Court of Appeals.

Missouri.

Aug. 4, 1965.

Dempster & Edwards, Sikeston, for plaintiff-appellant.

Evans & Dixon, Edward W. Warner, St. Louis, for defendants-respondents.

STONE, Judge.

In this proceeding under the Missouri Workmen's Compensation Law, Frank P. Johnson, the claimant, seeks benefits on account of personal injuries sustained by him on April 5, 1961, in an accidental fall at a service station in Dexter, Missouri (hereinafter referred to as the station). Claimant's theory has been and is that he was a *statutory* employee of Simpson Oil Company, Inc. [Section 287.040],[1] whose liability under the Compensation Law was insured by Travelers Insurance Company. The referee found for claimant, but on review the Industrial Commission, with one member dissenting, found for the alleged employer (hereinafter referred to as Simpson) and its insurer and denied compensation. The final award of the Commission having been affirmed by the circuit court, claimant again appeals.

■ We emphasize at the outset that, although on judicial review the circuit court was in the first instance, and this court is on appeal, authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that either court should substitute its own judgment on the evidence for that of the Commission; but that a reviewing court may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Cotton v. Voss Truck Lines, Inc., Mo.App., 392 S.W.2d 428; Hance v. John-son, Stephens & Shinkle Shoe Co., Mo. App., 306 S.W.2d 80, 83(5–7); Garrison v. Campbell "66" Express, Mo.App., 297 S.W.2d 22, 30(8), and cases collected in footnote 11. Our statement of facts accords appropriate and required recognition to that guiding principle. Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306, 307; Davis v. McKinney, Mo.App., 303 S.W.2d 189, 190.

At a time not fixed in the record, Simpson, a wholesale distributor of gasoline, motor oils and greases, leased the station, including "the grease rack and other heavy equipment," from one Paul McConnell, the owner thereof. Subsequently, to wit, "about 1955," Simpson acting by and through J. R. Stanley, its sales representative in charge of the "territory" in which Dexter was situate, entered into an *oral* agreement with claimant, under which claimant took possession of the station and operated it. About two years later, claimant formed a partnership with his son-in-law, Louis McConnell, who was a brother of Paul McConnell, owner of the station, and thereafter the partnership operated the station under the same agreement.

Both claimant and Stanley stated that there had been an oral agreement; but, as is so frequently true with respect to matters not reduced to writing, the testimony concerning that agreement was unsatisfactory in that it did not establish all of the details with certainty and clarity. However, at the hearing the parties were in substantial accord as to the material terms of the oral agreement. Claimant was required to purchase from Simpson all products handled by it which claimant might sell or use at the station, principally gasoline, motor oils and greases; but claimant

1. All statutory references are to RSMo 1959, V.A.M.S. That portion of Section 287.040, pertinent to determination of the instant case, reads as follows: "1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chap-

ter to such contractor * * * when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business. 2. The provisions of this section shall apply to the relationship of landlord and tenant, and lessor and lessee, when created for the fraudulent purpose of avoiding liability, but not otherwise * * *."

was to have the right, without limitation or restriction, to purchase from other suppliers such additional products as he might choose to sell or use. Simpson was to repair and maintain the grease rack and heavy equipment at the station. Other equipment, fixtures and small tools were to be supplied, maintained and replaced by claimant. For occupancy and use of the station, claimant was to pay Simpson, in addition to the wholesale price of gasoline and the transportation charge from Simpson's terminal to the station, an additional one cent per gallon as "gallonage rental." Claimant was (as he stated it) "guaranteed a margin of three cents a gallon" on gasoline, meaning that, during periods to which motorists fondly refer as "price wars," Simpson was to reduce its wholesale price of gasoline to provide a margin of three cents per gallon between that price and the posted price at the station pumps. The term of claimant's occupancy and use of the station was not fixed in the oral agreement; and, insofar as the record discloses, there was no discussion of the method by which, or the notice upon which, such occupancy and use might be terminated.

Claimant, first as sole proprietor and later in partnership with his son-in-law, operated the station under this oral agreement for some six years prior to the accident of April 5, 1961. During that period, the parties appear to have followed, without significant deviation, the above-outlined provisions of the oral agreement. Claimant and his partner handled at the station not only gasoline, oils and greases purchased from Simpson but also a motley mixture of other items obtained from various suppliers, including new and used tires, batteries, automobile accessories, motorcycles, candy, cigarettes and cigars. For a time, claimant's partner ran a repair shop on the same premises. All monies derived from operation of the station were deposited in the bank account of the "Dexter Service Station," the trade name under which claimant and his partner did business, and no reports concerning sales or profits were required to be made, or were made, to Simpson.

Claimant and his partner set their own working hours and received no salaries or wages from Simpson. From time to time, the partnership (neither consulting with, nor reporting to, Simpson) hired and discharged employees at the station, paid their salaries, and as their employer withheld income and social security taxes from employees' wages, reported and remitted such taxes to the United States Government, and made such additional tax payments as were required of the employer. One of those employees, after termination of his employment, occupied the second-floor living quarters of the station building at a rental of $20 per month which was paid to and retained by the partnership. The merchant's license required by the City of Dexter was procured by the partnership in its trade name, and payment therefor was made from partnership funds. All utility and heating bills likewise were paid by the partnership. The partnership acquired for use at the station, and in the partnership income tax returns took credit for depreciation on, numerous items ranging in value from $295 to $20, including a safe, adding machine, file cabinet, show case, cigarette vending machine, tire rack, tire changer, battery charger, sparkplug cleaner, grease gun, grease dispenser, electric drill, sander, metal tool cabinets and tools.

Stanley, Simpson's sales representative, called at the station once or twice each month. When asked as to "the purpose" of those visits, he replied, "making a routine call, checking over the property, seeing if he [claimant] needed merchandise." In an effort to show that Simpson might have exercised some measure of control over operation of the station, claimant's counsel interrogated both their client and Stanley concerning the suggestions which he (Stanley) might have made in the course of those station visits. Stanley readily agreed that he had inspected the rest rooms and that, *if* he had found them dirty, he might have suggested that they should be cleaned, and

that, *if* business hours at the station had not been maintained "in line with competition," he might have made some suggestion concerning that. However, Stanley did not recollect having given any direction to claimant or his partner with respect to rest rooms, business hours, or any other matter.

Claimant himself testified that Stanley "would look the station over and he would go in the rest rooms but he had no occasion to say anything to me about it because I kept my station up in order." In response to the inquiry "did you ever have any discussion with Mr. Stanley about the [business] hours," claimant's unqualified reply was "no, sir." And at another point in claimant's direct examination we find this question and answer: "Q. When Mr. Stanley would call on you would he give any directions as to what to do or not to do? A. No, not in particular because he had no occasion to."

Although claimant averred that the station had been operated by the partnership composed of himself and his son-in-law, the partnership income tax returns listed as a partner one O. C. Johnson, identified by claimant as his wife; and, for four years prior to the date of accident, the tax returns had showed the net income of the partnership as divided between claimant's wife and son-in-law. Claimant's glib explanation, tendered as sufficient and acceptable under the easy morality of the day, was that, although his wife admittedly had no money invested in the station and had done no work there, he had "put it [his share of the net income] in my wife's name to bring her social security up," because "I figure I [already] had my social security built up * * * and [I would] build up her social security and she could start drawing hers at 62." Actually, claimant (so he said) had drawn himself, but in his wife's name, $25 per week and an additional lump sum at the end of the year.

The Industrial Commission found, inter alia, that the partners were independent contractors; that the station was under the control of the partnership and not that of Simpson; that the business conducted at the station was that of the partnership and not that of Simpson; that "the partners did have an estate in the station premises (probably a tenancy at will)" by reason of the landlord-tenant (or lessor-lessee) relationship between Simpson and the partnership; that such relationship "was not created for the fraudulent purpose of avoiding compensation liability"; and that claimant was neither an actual nor a statutory employee of Simpson.

■ Claimant here concedes that he was an independent contractor and not an actual employee of Simpson, but he insists that he was a statutory employee. Section 287.040. The essential elements of statutory employment, as stated in subsection 1 of Section 287.040, are (a) "work done under contract," (b) "on or about the premises of the employer," and (c) in an operation of the employer's usual business there conducted. Grauf v. City of Salem, Mo.App., 283 S.W. 2d 14, 17(2); Snethen v. American Compressed Steel, Mo.App., 272 S.W.2d 850, 854. See Shafer v. Southwestern Bell Tel. Co., Mo., 295 S.W.2d 109, 115. "Premises," as used in the cited statute, "contemplates any place, *under the exclusive control of the employer*, where the employer's usual business is being carried on or conducted * * *." Sargent v. Clements, 337 Mo. 1127, 1134, 88 S.W.2d 174, 178(5); State ex rel. Potashnick v. Fulbright, 350 Mo. 858, 862, 169 S.W.2d 59, 61(2); Baker v. Iowa-Missouri Walnut Log Co., Mo.App., 270 S.W.2d 73, 76(4). This definition of "premises" is compatible with subsection 2 of Section 287.040 which states that "[t]he provisions of this section shall apply to the relationship of landlord and tenant, and lessor or lessee, when created for the fraudulent purpose of avoiding liability, *but not otherwise*." (Emphasis ours.) There being no suggestion of fraudulent purpose in the instant case, the meritorious and determinative inquiry is, as claimant's counsel frankly stated upon submission, whether or not the relationship between Simpson

and claimant, in respect to the station, was that of landlord and tenant.

The relationship of landlord and tenant is defined in general terms as that which arises from a contract, express or implied, by which one person occupies the real property of another with his permission and in subordination to his rights, the occupant being known as the "tenant" and the person in subordination to whom he occupies as the "landlord." Marden v. Radford, 229 Mo.App. 789, 799, 84 S.W.2d 947, 954(5); Williams v. Treece, 184 Mo.App. 135, 140, 168 S.W. 209, 211(4); 51 C.J.S., Landlord and Tenant, § 1, p. 509. The essentials of that relationship are said to be (1) a reversion in the landlord, (2) the creation of an estate in the tenant, either at will or for a term less than that for which the landlord holds, (3) the transfer of exclusive possession and control of the premises to the tenant, and (4) a contract, either express or implied, between the parties. Marden v. Radford, supra, 229 Mo.App. at 799, 84 S.W.2d at 954(6); 51 C.J.S., Landlord and Tenant, § 2 a, p. 510.

The gist of instant claimant's position is that the evidence in the case at bar did not permit a finding of the third essential, i. e., that exclusive possession and control of the station had been transferred to him, because (so claimant says) his relationship with Simpson was "subject to termination in 24 hours" and Simpson, not claimant, "had the responsibility for the care and conditions (sic) of the premises." As supporting the first predicate, i. e., that his relationship with Simpson was "subject to termination in 24 hours," claimant points to the following evidentiary fragments at widely-separated pages of the transcript. In claimant's direct examination, the inquiry (without reference to the length of notice) whether "if Mr. Stanley (Simpson's sales representative) advised you that you were to leave the station and surrender it to Simpson Oil Company would you or would you not do so" elicited the meaningless, self-serving reply, "yes, sir." In the course of examination of witness Stanley by claimant's counsel, the question (again without reference to the length of notice) "if he [claimant] was not operating it [the station] to your satisfaction and the company's satisfaction you would move the man out" drew the response "yes, sir." Neither of these testimonial bits is inconsistent with, or militates against, the finding on the entire record that claimant was a tenant at will[2] whose tenancy properly could have been terminated by Simpson only "by giving one month's notice, in writing, * * * requiring him to remove" from the station. Section 441.060(1).

Claimant's counsel also emphasize the testimony developed in their examination of witness Stanley to the effect that Simpson's oral agreement with claimant was "similar" to, or "the same sort of deal" as, Simpson had made with the operators of a service station at Bloomfield, Missouri, who had moved the next day after Simpson had asked them to vacate. But claimant's counsel conveniently overlook, as we are not at liberty to do in reviewing the evidence in the light most favorable to the findings and award of the Commission, witness Stanley's explanation that the Bloomfield operators "didn't ask for legal notice or thirty-day notice" but "voluntarily agreed to move" the following day—"it

---

2. A tenant at will is one who holds possession of premises by permission of the owner or landlord, but without fixed term. Amick v. Brubaker, 101 Mo. 473, 14 S.W. 627, 628; Black's Law Dictionary (4th Ed.), p. 1635; 41 Words and Phrases (Perm.Ed.), pp. 494–496. Such tenant has an estate in land [Restatement, Property, § 21, p. 51; 51 C.J.S., Landlord and Tenant, § 156, p. 762; Tiffany, Landlord and Tenant, § 2, 1. c. 5; In re Widening of Gratiot Ave., City of Detroit, 294 Mich. 569, 293 N.W. 755, 757], thus satisfying the requirement, as one of the essentials of the landlord-tenant relationship, for "the creation of an estate in the tenant, at will or for a term less than that for which the landlord holds the same." Marden v. Radford, 229 Mo. App. 789, 799, 84 S.W.2d 947, 954.

was their own mutual agreement." Nor may we disregard Stanley's positive statement at the hearing that, to terminate the oral agreement, "we [Simpson] would have to give him [claimant] a legal notice." An answer in his prehearing deposition susceptible of a contrary interpretation did no more than to present a variance bearing upon the weight and credibility to be accorded to his testimony, which were matters for consideration and determination by the Industrial Commission as trier of the facts. Cf. Steele v. Kansas City Southern Ry. Co., 302 Mo. 207, 257 S.W. 756, 759(4); Loveless v. Locke Distributing Co., Mo., 313 S.W.2d 24, 31(4); Leek v. Dillard, Mo. App., 304 S.W.2d 60, 63(2); Cable v. Metropolitan Life Ins. Co., 233 Mo.App. 1093, 128 S.W.2d 1123, 1125(3).

Passing to the second predicate of claimant's position, i. e., that Simpson "had the responsibility for the care and conditions (sic) of the premises," we need not repeat the hereinbefore-digested evidence bearing upon this subject. Suffice it to say at this point that the record neither compels nor supports the quoted conclusion and that such interest as Simpson understandably

had and manifested with respect to the condition of the station certainly was not sufficient to preclude the finding that the relationship between Simpson and claimant was that of landlord and tenant.[3]

That he, who asserts the applicability of the Compensation Law, has the burden of so proving, is a trite principle which has been recognized in numerous cases and with respect to various contested issues [Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 499(15), and cases collected in notes 13 and 14]; and, to carry that burden of proof, it was incumbent on instant claimant to establish every element of statutory employment required by Section 287.040(1). Grauf v. City of Salem, supra, 283 S.W.2d at 18(8). Cf. Wright v. Pierson, 238 Mo.App. 1157, 195 S.W.2d 519, 523(5). Furthermore, as our courts frequently have had occasion to point out, the inquiry on judicial review is whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, *not* whether a contrary conclusion might have been permissible. Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 1070, 218 S.W.2d

3. Compare Ramsey v. Gross & Janes Co., Mo.App., 241 S.W.2d 777, denying benefits under the Compensation Law, where the relationship between Gross & Janes, the alleged employer (owner of a sawmill), and claimant Ramsey (the operator thereof) was that of lessor and lessee [241 S.W.2d at 780] although it was stipulated that the owner "was to maintain and keep up the mill, except that Ramsey was to furnish sawteeth, and * * * gas and oil" and "[a]ll railroad ties cut with this mill were required to go to Gross & Janes" [241 S.W.2d at 778], who also had a substantial measure of control as to results as well as the reserved authority to veto Ramsey's purchase of timber and "to terminate the arrangement when in [the owner's] judgment Ramsey failed to produce sufficient cross-ties to make Ramsey's operation of the mill profitable for [the owner]" [241 S.W.2d at 780–781]; and Langley v. Imperial Coal Co., 234 Mo.App. 1087, 138 S.W.2d 696, denying benefits under the Compensation Law, where the relationship between Imperial, the alleged employer (owner of a coal mine), and a group of former employees, including claimant's deceased husband (who had operated the mine under the name of Domestic Coal Company), was that of lessor and lessee, although the employer's manager had "advanced the purchase price of mine equipment thus enabling the Domestic to comply with the provisions of the lease" [234 Mo.App. at 1092, 138 S.W.2d at 698]; and State ex rel. Shell Petroleum Corp. v. Hostetter, 348 Mo. 841, 156 S.W.2d 673, where "[t]he relation between relator [Shell] and its codefendant O'Reilly was that of lessor and lessee" [348 Mo. at 849, 156 S.W.2d at 676] although lessor Shell "did most of the repairing and maintenance of the place" and "[t]heir truck called three times a week for that purpose" 348 Mo. at 846, 156 S.W.2d at 674.

765, 770; Francis v. Sam Miller Motors, Inc., Mo., 282 S.W.2d 5, 13; Vandaveer v. Reinhart & Donovan Const. Co., Mo.App., 370 S.W.2d 156, 163; Barton v. Western Fireproofing Co., Mo.App., 326 S.W.2d 344, 349(5).

With these principles in mind, we have no doubt but that the Industrial Commission reasonably could have found (as it did) that the station was not under the exclusive control of Simpson, that claimant and his partner "did have an estate in the station premises (probably a tenancy at will)," [4] and that the relationship between Simpson and claimant was that of landlord and tenant, from all of which it necessarily followed (as the Commission concluded) that claimant was not a statutory employee of Simpson. Section 287.040.

The statutory injunction that the Compensation Law "shall be liberally construed with a view to the public welfare" [Section 287.800], upon which claimant's counsel lean heavily, neither impinges upon the function and right of the Industrial Commission, as trier of the facts, to draw from the evidence such inferences as may be fairly and reasonably permissible [Barton v. Western Fireproofing Co., supra, 326 S.W.2d at 349(6); Staten v. Long-Turner Const. Co., Mo.App., 185 S.W.2d 375, 381 (13)] nor authorizes allowance of a claim lacking an essential element required by law. Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 747–748(6); Hogue v. Wurdack, supra, 298 S.W.2d at 500(20).

The judgment of the circuit court affirming the final award of the Industrial Commission is affirmed.

RUARK, P. J., and HOGAN, J., concur.

---

4. In our opinion, "probably" well might have been omitted—claimant and his partner were tenants at will.