**Doris SMITH, Plaintiff-Respondent,**

v.

**Wesley H. LANNERT and Bettendorf-Rapp, Inc., Defendants,**

**Wesley H. Lannert, Defendant-Appellant.**

**Doris SMITH, Plaintiff-Respondent,**

v.

**Wesley H. LANNERT and Bettendorf-Rapp, Inc., Defendants,**

**Bettendorf-Rapp, Inc., Defendant-Appellant.**

Nos. 32536, 32544.

St. Louis Court of Appeals.

Missouri.

May 21, 1968.

Guilfoil, Caruthers, Symington, Montrey & Petzall, Gordon G. Hartweger, St. Louis, for defendant-appellant Lannert.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, Paul S. Brown, Donald L. James, St. Louis, for defendant-appellant Bettendorf-Rapp, Inc.

Jerome J. Duff, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

In this action to recover damages for personal injuries allegedly sustained on October 31, 1961, while on Bettendorf-Rapp's premises, plaintiff received a verdict and judgment in the amount of $2,-500.00 against Bettendorf-Rapp and the individual defendant. Bettendorf-Rapp was given a judgment in this same amount on its cross-claim against the individual defendant. Both defendants appeal. We will hereinafter refer to each defendant by name and to plaintiff by that designation. As will later appear herein, we are required to view the facts in the light most favorable to plaintiff and will state them in that manner.

This action was filed the 10th day of April, 1963. Plaintiff, who at the time of trial was a 36-year-old married female, was employed as a checker in Bettendorf-Rapp's super market at the time of the incident giving rise to this cause of action. She began working for Bettendorf-Rapp sometime in 1959. This incident occurred on October 31, 1961, and she continued working until January of 1962 when her

hours of work were changed and she took a leave of absence, never returning to her job. On the day this incident occurred plaintiff began work about 9:00 or 9:30 and in the late afternoon of that day went to Lannert to request time for a break to go to the restroom. This conversation took place at the "courtesy counter" where customer checks were cashed. She was told to return to work. She did not do so but repeated her request for a break. Her testimony was Lannert "* * * told me to get back down to the courtesy checkout and get to work or he would spank me." She replied there was no man big enough to spank her. Plaintiff did not believe Lannert was joking nor did he appear to be joking. Instead of doing so she asked a co-employee for her purse and upon receiving it started for the ladies' room in the employees' lounge. When she got to the door of the employees' lounge someone grabbed her from behind and pushed her into the lounge. She looked around and saw it was Lannert who then bent her over and struck her three times with his open hand on her buttocks. Her testimony was she was struggling all this time and did not know whether Lannert was laughing or not. Finally she was able to free herself and said to him: " 'Wes, you crazy fool, do you know what you are doing'." He didn't say anything. She stayed in the employees' lounge until time for her break had expired and then went back to work. The spanking caused red marks on her buttocks. When she asked Lannert to free her she spoke in a conversational tone.

She went back to the courtesy counter, gave her purse to Mrs. Fuszner, and returned to her cash register where she remained for a half hour or so. Her only other conversation with Lannert on this day occurred when he came to check the cash register to see if it balanced. Her testimony was that it did balance and that Lannert told her it was a good thing it did or he would spank her again. Her testimony was that she felt Lannert was trying to joke with her on this occasion but neither she nor Lannert were joking on the earlier occasion when she was struck.

Lannert was called by plaintiff as her witness. His testimony was that plaintiff had completed a break, had been reprimanded by him for spending too much time on that break, that this took place at the courtesy counter where she had been working, and that "a minute or a fraction of a minute" later plaintiff walked back into the employees' lounge and the striking took place. His testimony was that he was not perturbed with plaintiff in any way and thought the incident to be entirely in jest since both he and plaintiff were laughing and "kidding around" at the time. In December of 1961 plaintiff told Bettendorf-Rapp's personnel manager what had happened.

Lannert testified he did not consider himself in the course and scope of his duties when he struck plaintiff. It also appeared it was against company policy to lay hands on any employee and Bettendorf-Rapp had received no complaints about Lannert having ever done so prior to this time nor was he observed by other employees to act in an offensive manner toward them.

Bettendorf-Rapp contends it was prejudicial error to overrule its motion for a directed verdict offered at the close of all the evidence and to give plaintiff's verdict directing instruction which hypothesized: "Your verdict must be for plaintiff and against both defendants if you believe: * * * defendant Lannert was an employee of Defendant Bettendorf-Rapp, Inc. and that he intentionally struck plaintiff when he was within the scope of his employment by Bettendorf-Rapp, Inc." The trial court also gave Instructions 8 and 9 which read as follows: "INSTRUCTION NO. 8 Your verdict must be for Bettendorf-Rapp, Inc., and against Defendant, Wesley Lannert, on the cross claim of Bettendorf-Rapp, Inc., First, if you find for plaintiff under Instruction No. 5. INSTRUCTION NO. 9 If you find in favor of plaintiff, then

you must find in favor of defendant, Bettendorf-Rapp, Inc. on its cross-claim against defendant, Wesley Lannert and award damages in such sum as you may find plaintiff is entitled to recover against defendant, Bettendorf-Rapp, Inc."

There are no allegations of error dealing with the amount of the judgment and evidence pertaining to that issue is not included in the transcript and need not be summarized here.

Other allegations of error arise from incidents occurring during the trial. Plaintiff's petition alleged: "The assault upon Plaintiff was deliberate and did not in any way, arise out of the employment duties of Plaintiff and/or Defendant, Lannert, other than the occurrance (sic) of this assault took place at a time and place when Plaintiff was in the course of her duties for and in behalf of Defendant, Bettendorf-Rapp's Inc., and on the premises of Defendant, Bettendorf-Rapp's Inc." It was also alleged Bettendorf-Rapp knew or should have known Lannert "* * * was in the habit and practice of committing unprovoked and deliberate assaults on other employees * * *" and "* * * knew or should have known of the vicious and dangerous propensities of the defendant, Lannert, in this regard, * * *"; that Bettendorf-Rapp "negligently and carelessly failed and refused to discharge" Lannert and thereby "eliminate the danger and hazard of assault and injury existing to employees of Defendant, Bettendorf-Rapp's Inc., being controlled and supervised by a managerial employee with vicious tendencies and dangerous propensities, known to Defendant, Bettendorf-Rapp's Inc."; and that "As a direct and proximate result of the deliberate and aggravated physical assault and battery committed upon the person of the Plaintiff by Defendant, Lannert, and caused and contributed to be caused by the negligence and carelessness of the Defendant, Bettendorf-Rapp's Inc., in maintaining an employee such as Defendant, Lannert, in its employ in a managerial and supervisory position, * * *."

At the close of her evidence plaintiff asked leave of the court to amend her petition to allege Lannert did such acts in the scope of his employment. Plaintiff did not, however, ask that the allegations of the petition relating to the earlier stated theory be stricken. Both Lannert and Bettendorf-Rapp objected and Bettendorf-Rapp claimed surprise and asked that the case be continued. In response to Bettendorf-Rapp's objection and motion for a continuance plaintiff cited the amended answer of Bettendorf-Rapp wherein it alleged: "For further answer and defense this defendant states that at the time of the alleged incident mentioned in plaintiff's petition it was operating under and within the provisions of the Missouri Workmen's Compensation Law; that if plaintiff sustained any injuries, which this defendant denies, and if the incident arose out of and in the scope of employment, which this defendant also denies, then by virtue of the provisions of said Workmen's Compensation Law the plaintiff is debarred from prosecuting the alleged cause of action set forth in her petition * * * against this defendant."

The jury retired at 1:15 P.M. to consider their verdict. At 5:10 of the same day the jury was called back into the court and the following occurred: "THE COURT: Gentlemen, you have been out for approximately four hours now, may I ask who the foreman is? MR. AUERBACHER: I am the foreman. THE COURT: Mr. Auerbacher, I am going to ask you a question and I don't want to know how you stand in any way, shape or form, but I would like to ask you have * * * reached a verdict yet? MR. AUERBACHER: No. THE COURT: I am asking this generally of the whole panel and I am giving you a choice. It is now ten after five and you can deliberate farther into the evening if you like or I can send you home and you can come back tomorrow morning to complete your further deliberations, but I would like a show of hands if you would rather stay this evening? (Show of hands of ten to two)". The jury was thereupon returned to the

jury room for further deliberations and at 5:45 came back with a verdict which read: "We, the jury, find the issues in favor of the plaintiff and against both defendants and assess plaintiff's damages at $2,500.00. (signed) Ernest Auerbacher, Foreman". Counsel for both defendants moved this verdict not be accepted and for a mistrial on the ground that it was not responsive to the instructions of the court for the reason that it did not dispose of Bettendorf-Rapp's cross-claim against Lannert. At 6:00 P.M. after hearing counsels' arguments, this motion was overruled and the jury was returned to their jury room with instructions that they re-read the instructions with regard to the verdict, particularly Instruction No. 9. Instruction No. 9 informed the jury that if they found in favor of plaintiff then they must also find in favor of Bettendorf-Rapp on its cross-claim against Lannert in the amount of such sum as they found plaintiff was entitled to recover. Lannert's attorney objected to this action and again requested the jury be discharged and a mistrial declared. The trial court overruled the objections and denied the relief requested. At 6:30 P.M. the jury returned to the courtroom and handed up a verdict in favor of plaintiff, against both defendants in the amount of $2,500.00; and in favor of Bettendorf-Rapp against Lannert in the amount of $100.00. The court, over Lannert's objections, instructed the jury as follows: "Gentlemen, I am going to ask you again to return to your jury room and I am going to instruct you that for whatever amount you may find in favor of the plaintiff against both defendants, if you so find, in that event you must find a like amount in favor of defendant Bettendorf-Rapp and against defendant Lannert on their cross claim. So, you will now return to your jury room. * * * THE COURT: Let the record show that as the jury retired the foreman asked the Court a question, the contents of which was, if they do as I instructed them, can they deliberate further in reconsidering both verdicts, to which no answer was given." Counsel for both de-

fendants again requested the jury be discharged and a mistrial declared. Due to the manner in which defendant Lannert has worded its allegation of error with regard to the trial court's action it is best that what happened be set out in the words of the transcript. So doing, it appears that immediately after counsel for both defendants made their motion for a mistrial the following appears: "THE COURT: Both requests for a mis-trial will be denied. (THEREUPON, at 7:05 p. m. the jury returned) THE COURT: Mr. Auerbacher, will you hand the verdict to the bailiff please, sir? Gentlemen, would you rise and hear your verdict please? 'V E R D I C T We, the jury, find the issues in favor of the plaintiff, and against both defendants, and assess plaintiff's damages at $2,500.00. (signed) Ernest Auerbacher, Foreman' ". After polling the jury the trial court accepted the verdict and instructed the foreman to enter a verdict on the cross-claim in favor of Bettendorf-Rapp against Lannert in the amount of $2,500.00. Judgment was entered in accordance with this verdict.

■ The Missouri Workmen's Compensation Act is substitutional and the exclusive remedy for injuries arising out of and sustained in the course of the employment. Sheets v. Hill Bros. Distributors, Inc., Mo., 379 S.W.2d 514. Bettendorf-Rapp contends the trial court's ruling with regard to its motion for directed verdict offered at the close of all the evidence was erroneous for the reason plaintiff's remedy must be by the way of workmen's compensation proceedings.

■ It is now well settled the fact an injury is the result of a willful or criminal assault of a third person does not prevent that injury from being accidental within the meaning of the Workmen's Compensation Acts. See 15 A.L.R., Annotation, p. 588. It is equally well settled that where an employee sues his employer at common law for personal injuries, the applicability of the Workmen's Compensation Act is an

affirmative defense which must be pleaded and to which the burden of proof rests upon the employer. McDaniel v. Kerr, 364 Mo. 1, 258 S.W.2d 629; Mo.Digest, Workmen's Compensation, ☜2134. Every statutory element must be shown to make the employer liable under the act in cases where the employee is proceeding thereunder for compensation, Wright v. Pierson, 238 Mo.App. 1157, 195 S.W.2d 519, and we can conceive of no reason why the same should not be true when the applicability of the act is made a matter of defense. The entire matter of pleading and proof in common law actions was considered and ruled by the Supreme Court of this State en banc in Kemper v. Gluck, 327 Mo. 733, 39 S.W.2d 330, wherein it was also held that it is a question of fact as to whether or not the case comes within the provisions of the Workmen's Compensation Act. In the instant case Bettendorf-Rapp set up the defense affirmatively in its answer. No reply to that answer was filed and the allegations constituting new matter are to be taken as denied. The burden was therefore on Bettendorf-Rapp to prove facts sufficient to bring this case within the provisions of the Workmen's Compensation Act. In this endeavor Bettendorf-Rapp was deficient for at least two reasons. First, its evidence is entirely silent as to the applicability of the act or various other statutory jurisdictional elements. Secondly, Section 287.120, RSMo.1959, V.A.M.S., requires that accidents forming the basis for workmen's compensation proceedings arise "out of and in the course of" the employment. These requirements are of equal force. Liebman v. Colonial Baking Co., Mo.App., 391 S.W.2d 948. In Hacker v. City of Potosi, Mo.App., 340 S.W.2d 166, l.c. 170, this court held: "The phrase, 'out of' the employment refers to the origin or cause of the injury, while 'in the course of' the employment refers to the time, place, and circumstances under which the injury was received. * * * (citing cases)."

Before proceeding to consider these requirements further we deem it important that the distinction between the type of case represented by the instant appeal and that represented by Liebman v. Colonial Baking Co., supra, and Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, be stated and kept in mind. In those cases the injury was inflicted by a third party, not an employee but a total stranger. What we are concerned with in the instant case is an injury from an assault by one employee upon another. Annotations of cases of this character may be found in 15 A.L.R. 592; 21 A.L.R. 759; 29 A.L.R. 440; 40 A.L.R. 1126; 72 A.L.R. 113 and 112 A.L.R. 1261, under the general heading of assaults by co-employees and under the specific heading of "superior and inferior employees." It is true that in the majority of cases discussed in these notations the assault was inflicted upon the superior employee by the inferior employee but we can conceive of no reason a different rule should be applied when the situation is reversed as in the instant case and the assault is made by the superior employee.

■ We hold this accident did not arise "in the course of" plaintiff's employment for the reason the evidence is undisputed she was injured while in the process of disobeying a direct order of her superior and doing an act her employer, acting through Lannert, had expressly forbidden her to do. Fowler v. Baalmann, Inc., Mo., 234 S.W.2d 11, where the employee, an instructor pilot, was expressly forbidden to make a certain flight but did so anyway and was injured in the attempt, is an example of the application of this rule. Kasper v. Liberty Foundry Co., Mo.App., 54 S.W.2d 1002, is another. Therein the employee, a molder casting a gate which was rough and required smoothing, disobeyed the positive rule of the company to turn such castings over to the grinding department to be smoothed by the men regularly employed in such department and instead took the gate into the grinding department and undertook to do the work himself. In Staten v. Long-Turner Const. Co., Mo.App., 185 S.W.2d 375, this court held the

Industrial Commission could reasonably infer and find from the facts the claimant there involved was injured at a place he was visiting not for the purpose of seeking a tool to be used in his work but for a purpose expressly forbidden him; i. e., to obtain a lunch bucket, and so was not within the Workmen's Compensation Act. In the Staten case the court stated the applicable rule in this fashion: "A deviation on the part of an employee from the regular scope of his employment in violation of a known rule and direction of his employer prohibiting the doing of the thing which the employee elected to do at the time of his injury places the employee outside the course of his employment." (185 S.W.2d, l.c. 380, 381) In the instant case the injury occurred while plaintiff was taking a rest break in deliberate violation of Lannert's orders. Neither can plaintiff's actions be held to fall within the exception to this rule as stated in Fowler v. Baalmann, supra, at 234 S.W.2d, l.c. 17, as follows: "Nor do these facts present an instance where an employee was doing a thing he was employed to do, but was doing it in a manner prohibited by his employer, such as, an employee whose duty it was to oil certain machinery, but who (contrary to his employer's direct and affirmative orders) oiled the machinery while it was in motion. Mere disobedience of an order as to the *detail* of the work in hand or the mere breach of a rule as to the *manner* of performing the work are not generally sufficient to deprive an employee of his right to compensation so long as he does not go out of the sphere of his employment."

It follows plaintiff's common law action was available to her and the trial court correctly ruled this issue.

■ Bettendorf-Rapp next contends there was insufficient evidence to make a submissible case. In determining this issue we are to refer to the submission in plaintiff's verdict directing instruction and with respect to that submission view the evidence in the light most favorable to plaintiff giving her the benefit of all reasonable inferences to be drawn therefrom. Newcombe v. Farmer, Mo.App., 360 S.W.2d 272; Thaller v. Skinner & Kennedy Co., Mo.App., 307 S.W.2d 734. See also Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124; Mo.Digest, Appeal and Error, ☜927(7).

There is no dispute but that Lannert was an employee of Bettendorf-Rapp and that he intentionally struck plaintiff as submitted in plaintiff's verdict directing instruction. The issue is whether there is evidence from which the jury could find Lannert "* * * was within the scope of his employment by Bettendorf-Rapp, Inc." as submitted in that instruction. In determining that issue we are looking to Lannert's acts whereas in ruling upon Bettendorf-Rapp's contention with regard to the applicability of the Workmen's Compensation Act our attention was directed toward plaintiff.

■ The principle of respondeat superior underlies the liability of Bettendorf-Rapp, if any exists. As was stated in Haehl v. Wabash R. Co., 119 Mo. 325, 24 S.W. 737, quoted with approval by this court in Tockstein v. P. J. Hamill Transfer Co., Mo.App., 291 S.W.2d 624: "'The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such case whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant, not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether

provoked or unprovoked, commits an assault upon another, when that has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is the purely personal wrong of the servant, for which he, and he alone, is responsible.'" In this connection we are cognizant Bettendorf-Rapp may be held responsible for the assault committed by Lannert even though Lannert acted wantonly and contrary to Bettendorf-Rapp's instructions (Panjwani v. Star Service & Petroleum Co., Mo., 395 S.W.2d 129) provided there is proof the assault was made with intent to promote or further the master's business. Tockstein v. P. J. Hamill Transfer Co., supra.

■ Plaintiff's best evidence shows the employees were entitled to certain rest "breaks" and the jury was entitled to the fair inference these were to be granted at the discretion of the store manager Lannert whom plaintiff's evidence described as having the "full say" over all matters taking place within the store. Plaintiff had been reprimanded once for taking too much time on her rest break and Lannert's testimony was that she requested another break which he refused to authorize. Instead, plaintiff was ordered to return to work and Lannert stated she would be struck (spanked) if she did not. In spite of the threat and immediately thereafter plaintiff left the area where she was working and went to the employees' lounge to take the "break" for which Lannert had refused permission. Upon reaching the door of the lounge, and by Lannert's testimony within a minute or a fraction of a minute after he refused her permission to take a break, she was seized by Lannert who struck her with his open hand on her buttocks. In Haehl v. Wabash R. Co., supra, it is stated the wrong is the personal wrong of the servant and he alone is responsible when the assault "* * * has and can have no tendency to promote any purpose in which the principal is interest-

ed, and to promote which the servant was employed, * * *." In the instant case the jury could reasonably infer from the evidence Bettendorf-Rapp was interested in maintaining what it deemed to be an adequate work force with which to handle the volume of its business and that this was one of the purposes for which Lannert was employed as store manager. When this inference is considered in the light of Lannert's previous reprimand to plaintiff for taking too much time on an earlier rest break, his refusal to grant permission for another rest break, Lannert's order to plaintiff to return to work, her immediate disobedience of that order, and Lannert's assault upon her following so closely in the sequence of events as to refute any contention but that it was connected therewith, we hold there is evidence from which the jury could find Lannert's act in striking plaintiff was to enforce employee discipline with respect to orders given by the store manager with reference to employee rest breaks, thus promoting Bettendorf-Rapp's purpose of keeping an adequate work force on the floor and maintaining employee discipline.

With respect to Lannert's act in striking plaintiff, what is really involved is a lack of discretion or an exercise in bad judgment in performing his duties. There is no question that Lannert was properly engaged in the performance of his duties as store manager when he denied plaintiff's request for a rest break. Nor was there any interval of time nor separate activity interposed between the conversation between Lannert and plaintiff and this assault. We cannot say as a matter of law Lannert abandoned his duties in that regard at that moment and indulged in the assault as an individual act. The superior is responsible for the violent and excessive prosecution of his duties by its store manager until there is sufficient interruption in the performance of his duties to justify this court holding as a matter of law (as we must if we sustain this allegation of error) Lannert had abandoned his employ-

ment and this assault was an independent and individual act as contrasted to those acts within the terms of his employment. The trial court correctly ruled Bettendorf-Rapp's contention no submissible case was made. What we have said in ruling upon this issue also disposes of Bettendorf-Rapp's contention the trial court erred in giving Instruction No. 5.

■ Bettendorf-Rapp also assigns as prejudicial error the trial court's action permitting plaintiff to amend her petition at the close of her case to plead Lannert was in the scope of his employment and in refusing Bettendorf-Rapp's motion for a continuance. It requires no citation of authority to substantiate the rule that matters of this nature lie within the trial court's discretion. The amended answer and cross-claim filed by Bettendorf-Rapp indicated its anticipation of this type of evidence. Moreover, any additional evidence needed by Bettendorf-Rapp to controvert the amended pleading would necessarily have to come from its employees and the sources of such evidence were therefore available to it during the trial. Under such circumstances Bettendorf-Rapp was not adversely affected, its rights were adequately protected, and therefore the trial court did not abuse its discretion in permitting the amendment.

We find no error requiring reversal of this judgment as to Bettendorf-Rapp.

We pass now to the allegation of error contained in Lannert's appeal which reads as follows: "The trial court erred in interrupting the jury's deliberations and in entering judgments on plaintiff's claim and the cross-claim; the record discloses that the jury had not determined the issues in the case, nor had they returned a correct verdict; * * *." It is difficult to ascertain whether Lannert intended to present two different contentions in this allegation of error. The main thrust of his brief deals with the trial court's alleged actions in interrupting the jury's deliberations. In this connection in the argument portion of

the brief the following statements appear: "Subsequently, the Court called the jury back, took from them the original verdict form favorable to plaintiff, and then demanded that the jury foreman execute a matching cross-claim verdict form. This was prejudicial error. The judge decided this case, not the jury. * * * a Court may not interrupt and end jury deliberations, and that is just what happened here."

■ There is no merit to this allegation. The transcript fails to disclose the trial court "interrupted" the jury's deliberations. The matter is important enough to risk the charge of being repetitious and we will review what happened in detail. The transcript discloses that on the occasion of the jury's second return to the courtroom they returned a verdict in favor of plaintiff and against both defendants in the amount of $2,500.00 and in favor of Bettendorf-Rapp against Lannert in the amount of $100.00. They were ordered returned to their jury room by the court who instructed them in the event they find in favor of the plaintiff against both defendants they must find a like amount in favor of Bettendorf-Rapp on its cross-claim against Lannert. This of course was a correct instruction of the law as contained in Instruction No. 9 previously given the jury and no complaint is made as to that matter. The transcript also discloses that as the jury then retired the foreman asked the court whether the jury could reconsider both verdicts and that no answer was given to this question. The transcript does not contain any reference to action by the trial court returning the jury to the courtroom or interrupting its deliberations. All it shows is that the jury returned to the courtroom at 7:05 P.M. and handed up the same verdict as they had first reached; i. e., against both defendants in favor of plaintiff in the amount of $2,500.00 and without any finding as to the cross-claim. The trial court then instructed the foreman to enter a verdict on the cross-claim in favor of Bettendorf-Rapp against Lannert in

the same amount as they found in favor of plaintiff against both defendants.

Neither does Lannert's separate after-trial motion contain any statement alleging the trial court interrupted the jury's deliberations and ordered the jury returned to the courtroom and to submit the original verdict which the court had previously refused to accept. Nor does plaintiff's brief contain any admission the trial court so acted. Under such circumstances the transcript's version of what happened is binding upon this court. Insofar as Lannert's allegation of error may be said to also present the contention the verdict was incorrect, there is no merit to that contention either. It will be recalled that by Instructions No. 8 and 9 the jury was told their verdict must be for Bettendorf-Rapp and against Lannert in the cross-claim if they found for plaintiff on her verdict directing instruction and the amount awarded to Bettendorf-Rapp on the cross-claim against Lannert must be the same as the amount the jury found plaintiff was entitled to recover against Bettendorf-Rapp. These instructions are not attacked by either defendant and must therefore be accepted as correctly stating the law as to the cross-claim. Under such circumstances Lannert cannot be sustained when he complains of the trial court's action in accepting the verdict the jury returned and which found in favor of plaintiff and against both defendants in the amount of $2,500.00. Neither can Lannert contend the trial court's action in directing the foreman to enter a verdict on the cross-claim for the same amount constituted prejudicial error. Under the instructions of the court to which Lannert did not preserve any allegation of error and may therefore be said to have agreed, the jury had no other choice. The verdict as returned by the jury was not inconsistent but was incomplete and its incompleteness was a mere formality under Instructions 8 and 9. It is likewise clear that any verdict other than the one which the court ordered entered would have been improper under

those instructions. It follows that defendant Lannert's allegation of error is totally without foundation and must be ruled against him.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

ANDERSON, P. J., WOLFE, J., and JAMES H. KEET, Jr., Special Judge, concur.