Harold W. **CHILDERS**,
Claimant-Respondent,

v.

**TOWN & COUNTRY SUZUKI SALES, LTD.**, Alleged Employer-Appellant,

and

**Universal Underwriters Insurance Co.**, Insuror-Appellant.

No. 42389.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 13, 1981.

Mogab & Hughes, Thomas J. Gregory, St. Louis, for claimant-respondent.

William L. Davis and Thomas Plunkert, St. Louis, for Town & Country Suzuki and Universal Underwriters.

SIMON, Judge.

This is an appeal by Town and Country Suzuki Sales (Town and Country) and Universal Underwriters Insurance Company (Universal Underwriters) from an affirmance of an award by the Labor and Industrial Relations Commission to respondent Harold Childers for injuries he sustained while servicing a motorcycle in Town and Country's basement. Acting pursuant to the Workmen's Compensation Act, the Commission held that Childers was a statutory employee of Town and Country and therefore, entitled to compensation. The circuit court upheld this ruling. On appeal, appellants contend that as a result of a lease between Childers and Town and Country, Childers was not a statutory employee of Town and Country, and that the injuries did not occur on Town and Country's premises. We affirm.

Childers had been employed by Town and Country since 1971 or 1972. During this entire time Childers worked in Town and Country's service department as a motorcycle mechanic and later as the service manager. The service department was located in the basement of Town and Country's building.

Although Town and Country was required by its franchisor, U.S. Suzuki, to maintain a service department, Robert Faerber, part owner and vice-president of Town and Country, decided in 1974 to "get rid" of the service department. Mr. Faerber had been reading about motorcycle dealers who had sold their service departments for ten to twenty thousand dollars and had learned of a motorcycle dealer in St. Louis who had leased his service department. He called the dealer and was told that the leasing arrangement was working well, and that the customers were getting better service. Childers had been talking about getting a shop of his own and Faerber asked him if he would like to lease the service department from Town and Country. Childers agreed and on July 1, 1974 Childers and Town and Country executed a one year lease calling for Childers to pay Town and Country two hundred dollars a month. The lease further provided for the rental by Town and Country to Childers of the major repair tools needed for servicing Suzuki motorcycles.

Childers called his new business "Harold's Suzuki Service." Although the lease described the premises as "9424 Rear (Basement) St. Charles Road, Breckenridge Village, St. Louis County, Missouri," a quarter of the described basement area was fenced off and contained property belonging to Town and Country. Childers testified that he believed that he could work only during the hours that Town and Country was open. There was a door on the first floor, which was the motorcycle sales and parts area, leading to a stairway to the basement, but this door was never locked. In fact, Childers had no means of securing the basement from Town and Country personnel.

Childers employed his own mechanics. He had his own business cards and work orders printed bearing the name, "Harold's Suzuki Service." Childers had his own commercial checking account and filed his own business income tax returns. In addition, he obtained a Workmen's Compensation policy for his employees.

Childers performed the service business of Town and Country, except that Town and Country personnel assembled the new motorcycles. This work was performed in the basement using Childers' leased tools, but Town and Country did not pay Childers for its use of the basement or the tools. Childers performed the warranty work for Town and Country at no charge to the customer. He was paid the same amount that the manufacturer paid Town and Country. Childers purchased all of his parts from Town and Country at 25 to 35 per cent off the retail rate.

The only physical change in Town and Country's building after the agreement was

the addition of a small sign on the basement door which read "Harold's Suzuki Service." A larger sign, however, remained in the corner of the parking lot which read "Town and Country Sales and Service." Harold's Suzuki Service had neither its own phone number nor its own phone listing. Many of Childers' customers paid by check. Approximately half of these checks were payable to Town and Country. In these instances, Town and Country would immediately endorse the checks over to Harold's Suzuki Service. Childers' customers were allowed to use Town and Country's Master Charge machine; Town and Country would deduct the percentage it would have to pay Master Charge for its service and would pay Childers the remainder.

On March 11, 1976 Childers was injured while working in the basement on a motorcycle. Childers filed a claim pursuant to the Workmen's Compensation Law. The claim was denied by the administrative law judge, but the Labor and Industrial Relations Commission reversed, holding that Childers was the statutory employee of Town and Country. The circuit court upheld this ruling.

■ The first point that must be addressed is the applicable standard of review. We view the record in the light most favorable to the findings of the Commission, considering all inferences favorable to its result. The award will not be set aside unless the Commission's findings are unsupported by competent and substantial evidence and are contrary to the overwhelming weight of the evidence. *Gibson v. Greenfield*, 561 S.W.2d 689 (Mo.App.1978). Although the determination of whether an individual is a statutory employee is a question of law, the decision is necessarily dependent upon the factual findings. *Williams v. City of St. Louis*, 583 S.W.2d 556, 558 (Mo.App.1979).

■ Appellants initially claim that the circuit court erred in upholding the Commission's ruling that respondent was the statutory employee of Town and Country,

because a lease agreement existed between the two parties for the premises on which Childers was injured. Appellants rely on § 287.040 RSMo. (1969) (§ 287.040 RSMo. (1978))[1] which reads in relevant part:

"1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

2. The provisions of this section shall apply to the relationship of landlord and tenant, and lessor or lessee, when created for the fraudulent purpose of avoiding liability, but not otherwise. In such cases the landlord or lessor shall be deemed the employer of the employees of the tenant or lessee."

In the absence of an allegation of fraud, the existence of a landlord-tenant relationship would relieve Town and Country of liability. Therefore, we must determine whether the Commission was correct in finding that a landlord-tenant relationship did not exist.

■ The fact that the agreement between Childers and Town and Country was labeled by the parties as a "commercial lease" is not determinative of whether the relationship of landlord and tenant existed. *Friend v. GEM International*, 476 S.W.2d 134, 136 (Mo.App.1971). The essentials of a landlord-tenant relationship are:

"(1) a reversion in the landlord, (2) the creation of an estate in the tenant, either at will or for a term less than for which the landlord holds, (3) the transfer of exclusive possession and control of the premises to the tenant, and (4) a contract either express or implied between the parties."

*Johnson v. Simpson Oil Company*, 394 S.W.2d 91, 96 (Mo.App.1965).

---

1. All further references are to RSMo 1969.

The Commission found that Childers did not have exclusive possession and control of the basement and that the "lease" is more accurately characterized as a license. In *Wandell v. Ross*, 241 Mo.App. 1189, 245 S.W.2d 689, 693 (1952), the court held that:

> "[T]he principal test for determining whether the relationship created is that of landlord and tenant rather than that of licensor and licensee is *whether the contract confers exclusive possession of the premises as against all the world, including the owner,* and a mere permission to use land, dominion over it remaining in the owner and no interest in, or exclusive possession of, it being given, is but a license." (emphasis in the original).

In this case the "lease" did not reserve in Town and Country the right to enter the basement to store parts or to assemble motorcycles. Under the lease Town and Country reserved only the right to inspect the premises. The terms of the lease notwithstanding, the record indicates that Town and Country made extensive use of the basement. Town and Country stored parts in the basement. Town and Country personnel had constant access to the basement and Childers did not even have a key to the door leading from Town and Country's sales department to the basement. Furthermore, Town and Country personnel used the basement and Childers' "rented" equipment, at no charge to assemble new motorcycles. The record contains substantial evidence to support the Commission's finding that Childers did not have exclusive possession of the premises.

Thus, we rule against appellants on this point.

Appellants next claim that the circuit court erred, because Childers was not on Town and Country's premises at the time of his injury. Under § 287.040(1), an employer is someone who has work done under contract in the course of his usual business on or about his premises. In the *Johnson* case, *supra*, the court defined "premises" as: "any place, *under the exclusive control of the employer,* where the employer's usual business is being carried on or conducted . . . ." *Johnson, supra* at 95 (emphasis in original) (*quoting, Sargent v. Clements*, 337 Mo. 1127, 88 S.W.2d 174, 178 (1935)). Clearly, the basement was a place in which the employer's usual business was being carried on or conducted. The more difficult issue is whether Town and Country had exclusive control of the basement.

In a case involving similar questions, our brethren in the southern district defined "exclusive control" as: "such a control in the 'premises' by the statutory employer that the general public does not have an equal right to use them along with the employer and the independent contractor." *Boatman v. Superior Advertising Co.*, 482 S.W.2d 743, 745 (Mo.App.1972); *see also State ex rel. Potashnick v. Fulbright*, 350 Mo. 858, 169 S.W.2d 59, 62 (1943). Here Town and Country made use of the basement in several ways not available to the general public. It is especially significant that Town and Country assembled new motorcycles and stored parts in the basement without paying Childers. Childers did not have keys to the front door of the building or to the door leading to the basement. He could not open the service area when Town and Country was closed, nor could he secure the basement area from Town and Country personnel. *See Gibson v. Greenfield*, 561 S.W.2d 689 (Mo.App.1978). The record indicates that Town and Country was not merely an invitee and that they did not regard the basement as a separate business entity. Thus Childers was on Town and Country's premises when he was injured. The judgment of the circuit court is affirmed.

SATZ, P. J., and SMITH, J., concur.