**Norma FRIEND, Plaintiff-Respondent,**

v.

**GEM INTERNATIONAL, INC., Defendant-Appellant.**

**No. 34070.**

St. Louis Court of Appeals,
Missouri.

Dec. 28, 1971.

Motion for Rehearing or to Modify Opinion or to Transfer to Supreme Court Denied Jan. 18, 1972.

Application to Transfer Denied March 13, 1972.

Leritz & Leritz, J. L. Leritz, J. D. Leritz, St. Louis, for defendant-appellant.

Sommers, Montrey & Holloran, James P. Holloran, St. Louis, for plaintiff-respondent.

WEIER, Commissioner.

On June 11, 1968, the defendant, Gem International, Inc., conducted a department store business at 10900 Page Avenue, Saint Louis County. The furniture department was operated by Biederman Furniture Company under the name of an affiliate, Northland Discount Company, Inc., on the first floor of the Gem store. Plaintiff, Mrs. Norma Friend, was employed as a cashier and clerk by Biederman. About 6:15 p. m. upon this date, Mrs. Friend left the area where she was employed and started to go to a cafeteria on the second floor. To walk there, she passed through a doorway which led to a stair. Above the doorway an air-conditioning system was maintained by Gem. Condensation in this system caused water to collect and drip onto the floor, where it formed a puddle across the doorway, from one-eighth to one-fourth inch thick. It was admitted that Gem was responsible for the maintenance of the floor and steps. After getting the leather soles of her sandals wet walking through the water, Mrs. Friend ascended two or three steps. The steps were also wet. Her right foot slipped on the concrete surface of one of the steps and she fell, injuring her right foot.

A trial of the case resulted in a jury verdict for Mrs. Friend assessing damages for her injuries in the sum of $6,000.00. Gem's appeal from the judgment entered below contended that its motion for directed verdict should have been sustained at the close of all the evidence because Mrs. Friend was either a licensee or invitee of Gem and, since she knew of the water on

the floor, there was no duty to warn her; hence, no liability. Mrs. Friend, just as vigorously, contended that her employer was a tenant of Gem and that she, as an employee of the tenant, occupied the same position as her employer with respect to the duty of a landlord to exercise reasonable care in maintaining the premises used by the tenant; that her knowledge of the dangerous condition did not prevent recovery but was merely a matter of contributory fault for the jury to consider and, since this was resolved in her favor, she was entitled to retain her judgment.

We do not attempt to restate the law which applies in each instance but rather refer those who wish to pursue the matter to these cases: as to an invitee, licensee or trespasser, Wells v. Goforth, Mo., 443 S.W. 2d 155, 157 [1–3]; as to a tenant, Darlington v. Railway Exchange Bldg., Inc., 353 Mo. 569, 183 S.W.2d 101, 105 [1, 2]; Reckert v. Roco Petroleum Corporation, Mo., 411 S.W.2d 199, 204 [1–4]. We must rather attend the relationship existing between Gem and Biederman to determine the duty owed to Mrs. Friend by Gem.

As was previously stated, Gem contended plaintiff was a licensee or, at best, an invitee at the time of her fall. It based this on the further contention that Biederman, her employer, was its licensee and not its tenant. As to this, the evidence disclosed that Biederman occupied an area in the Gem department store under a contract which provided payment by Biederman to Gem of a percentage of gross sales which could vary, depending on the total amount of the sales. Warehouse space was rented by Gem to Biederman on a square foot basis. In the summer of 1968, Biederman occupied nine to ten thousand square feet of floor space on the first floor, but this space was not designated in the contract. Gem changed this area from time to time, both as to area and location in the building. No other merchant occupied any of the area allotted to Biederman, but there were others who occupied areas adjacent to Biederman. No barrier or line of demarca-

tion separated one area from another, so far as customers were concerned. But, Biederman had a particular space in the store which its employees knew to be theirs and on which they operated the business. All of the floors in the store were cleaned by Gem. Gem employees checked the cash register tapes each evening for the total daily receipts to compute the charge. The entire written contract itself was not introduced, but the factual relationship of the parties can be pieced together from part of the contract read into evidence and the testimony of witnesses appearing for both parties.

■ How do we label this contemporary merchandising concept? Within the standards defining license or leasehold, how do we determine the legal relationship of the parties? Gem and Biederman described their written contract as a "license"; Biederman was designated "licensee" and the percentage paid, a "percentage license fee". But it matters not what the parties call it, other than to show their express intent. Rather, the nature of the relationship depends upon how it fits within the standards set by the law. The denomination of an instrument as a "license" or a "lease" by the parties cannot alter or affect its true nature. It assumes its correct appellation by reason of the rights and obligations created by its terms under the law. St. Joseph & St. L. R. Co. v. St. Louis, I. M. & S. Ry. Co., 135 Mo. 173, 36 S.W. 602, 608; Whiteside v. Oasis Club, 162 Mo.App. 502, 142 S.W. 752, 753 [2]; Wandell v. Ross, 241 Mo.App. 1189, 245 S.W.2d 689, 692 [3].

■ To understand the issues raised by the parties, we turn to time-honored definition. The status of landlord and tenant is defined, generally, to arise from contract, express or implied, under the terms of which a person designated as "tenant" enters into possession of land of another, known as "landlord", with the rights of the tenant subordinate to the landlord. "The essentials of that relationship are said to be

(1) a reversion in the landlord, (2) the creation of an estate in the tenant, either at will or for a term less than that for which the landlord holds, (3) the transfer of exclusive possession and control of the premises to the tenant, and (4) a contract, either express or implied, between the parties." Johnson v. Simpson Oil Company, Mo.App., 394 S.W.2d 91, 96 [4]. On the other hand, the condition of licensor and licensee has also been defined, generally, to arise when one who owns or possesses land known as the "licensor" grants to another known as "licensee" the privilege of going onto land for a certain purpose without passing an estate in the land. One of the essential characteristics here is the absence of the right to possession of the land. Wandell v. Ross, supra, 241 Mo.App. 1189, 245 S.W.2d 689, 692 [4]; Wood v. Gregory, Mo., 155 S.W.2d 168, 171 [6].

It is the absence of right to possession and control of the premises by Biederman that Gem relies on to conclude the relationship to be one of license and not lease. Gem contends Biederman merely had a privilege of selling merchandise, under a percentage license fee. It points out that the space occupied by Biederman was determined by Gem and that it had been changed several times by Gem. Further, there was no barrier or enclosure to separate the various departments, including the one operated by Biederman. This state of facts, Gem contends, can only lead to the conclusion that Biederman was a licensee and not a tenant.

Mrs. Friend, on the other hand, maintains, even though there was a change in area, there was also a corresponding change in percentage charge. Biederman, furthermore, had a definite and specific area which it occupied, to the exclusion of other merchants. As to warehouse space, this was rented on a per-square-foot basis. Although Gem's employees entered the area reserved to Biederman, this was for the purpose of checking the gross sales to compute the charge for occupancy, or to sweep floors, or to make social calls. Thus, plaintiff contends, Biederman had possession of and control over a certain area sufficient to classify it as a tenant.

It is apparent that there are indices of a landlord-tenant relationship sufficient to conclude that this status existed at the time Mrs. Friend was injured. Possession of a definite space in the store was held by Biederman. Although it might be changed from time to time at the will of Gem, its boundaries were definite and could be determined by the parties. Mrs. Friend, in describing the location of the stair on which she fell, stated that appliances, such as televisions and refrigerators, were on one side. A furniture rack was positioned in front. A radio rack and an office were also on the side. The cash register was behind a counter. The furniture was displayed and the operation conducted the same as in other Biederman stores where she had worked. Only employees were allowed behind the counter, except Gem employees to check the sales. According to Mr. Kaupang, assistant manager for Biederman, the area used by Biederman occupied a full corner, plus almost a whole side, some 150 to 200 feet wide. That the area might be changed would not destroy the landlord-tenant relationship. Any contractual status may be changed by agreement of the parties where the rights of others are not affected. Similarly, a tenant at will holds possession at the will of the landlord, but without a fixed term. The tenant, nevertheless, has an estate in the land. Johnson v. Simpson Oil Company, supra, Mo.App., 394 S.W.2d 91, 96, fn. 2. The occupancy of Biederman might be likened to that of a tenant at will. It occupied a definite area on the premises of the landlord. This space was reserved for the use and occupancy of Biederman. Nevertheless, Gem from time to time terminated occupancy of this area and granted it the use and occupancy of another.

The fact that Gem employees entered the premises to clean the aisles and to determine the gross sales from the cash

register does not destroy the concept of exclusive possession and control. Right of entry by the landlord to collect rent, for instance, is recognized in some jurisdictions (51C C.J.S. Landlord & Tenant § 318, p. 812) and reservation of such right in the lease by the landlord or entry by the landlord to perform certain services can be accomplished with the consent of the tenant, without changing the status of landlord and tenant.

Gem places much reliance on the case of Wandell v. Ross, supra, 241 Mo.App. 1189, 245 S.W.2d 689. There, plaintiffs brought suit against defendants for loss of future profits on account of the breach of an instrument which plaintiffs contended was a lease. The instrument was styled "Store Lease". It "leased" to plaintiffs for a term of three years a hat checking space to the left of the front entrance of certain premises where defendants operated a restaurant. In addition to hat checking service, plaintiffs were allowed to sell cigarettes, cigars, novelties, confections, jewelry and kindred merchandise. During the term, plaintiffs were ordered from the premises, defendants complaining that plaintiffs failed to give good service to defendants' patrons. The court, in deciding that the contract was a license rather than a lease, emphasized that the space was to be used for the purpose of "hat checking service". In addition, the agreement provided that "adequate" service was to be provided and that plaintiffs were to discharge any employee who did not abide by the "rules" of the establishment. Pointing out that the inventory of merchandise did not weigh over five pounds, and the essential nature of the agreement was to provide a service for the restaurant, the court concluded the real purpose of the agreement was to provide this service and not to pass an estate in the land. Hence, it was a license, not a lease.

The distinction between *Wandell* and the instant case is readily observed. The purpose of the agreement between Gem and Biederman was to grant or give Biederman dominion over a definite space on the floor of the Gem store, not to render a service, but to display merchandise, demonstrate it to customers, sell to customers, and maintain an office.

Furthermore, the case before us concerns an action for negligence and not one involving rights under a contract as to real property. And, where, as here, an action is predicated upon the relationship of landlord and tenant, such relationship may arise by either express or implied contract and upon slight evidence. Delay v. Douglas, Mo.App., 164 S.W.2d 154, 156 [5].[1]

We conclude the relationship of the owner of the department store and the employer of plaintiff was one of landlord and tenant. Therefore, the duty owed plaintiff by the landlord in regard to maintaining the passageway used in common by all persons travelling from one floor to another on the stairway located at this point was the duty to use ordinary care. Stoeppelman v. Hays-Fendler Construction Company, Mo.App., 437 S.W.2d 143, 147 [1, 2]. The fact that plaintiff knew of the wet condition of the floor did not prevent her recovery of damages for her injuries sustained in the fall. This knowledge was a factor for the jury to consider on the defense of contributory negligence submitted to them under a separate instruction. It did not bar recovery as a matter of law.

Next, defendant contends that the court erred in giving plaintiff's verdict directing instruction (MAI No. 22.05) because this was given with the assumption

---

1. In this connection, our courts recognize that classification of status of persons on lands of another is becoming less important in determining the standard of care due them. Rather, it is the likelihood of presence of others on the premises that underlies the duty owed to them. Once presence is known, the significance of status largely disappears, and a uniform duty to exercise reasonable care is owed. Cunningham v. Hayes, Mo.App., 463 S.W. 2d 555, 559 [1–3].

that there was a landlord-tenant relationship. Defendant asserts this relationship was a disputed issue of fact. But the evidence which went to the establishment of this relationship was not disputed. The only dispute was over the application of the law to those facts. Therefore, a finding of the relationship of Gem and Biederman in the instruction was not required. The determination of the status of plaintiff at the time of her injury was for the court to determine. Stoeppelman v. Hays-Fendler Construction Co., Mo.App., supra, 437 S.W. 2d 143, 149 [12–13].

■ Further error by the court is advanced by Gem in the giving of definitional instruction MAI No. 11.05, as a separate instruction following the plaintiff's verdict director (MAI No. 22.05), rather than adding it as a paragraph to the preceding instruction. MAI No. 11.05, which defines "ordinary care" is followed by these "Notes on Use": "Where the term is used only once, this paragraph may be added to the instruction using the term. Where more than one use is made, the definition may be given as a separate instruction." The use of the word "may" rather than "shall" or "must" indicates permissiveness rather than mandatory obligation. "An accepted dictionary definition of 'may' is 'permission'. Permission to do a thing is not a requirement or order that it be done." Byers Bros. Real Estate & Insurance Agency, Inc. v. Campbell, Mo.App., 353 S.W.2d 102, 108 [18]. We can see no possibility that the method of instruction used by plaintiff could confuse the jury, as contended by defendant.

■ Lastly, defendant contends the verdict of $6,000.00 was so grossly excessive that it indicated passion and prejudice on the part of the jury; and further, that it violated the rule of uniformity. The first part of this contention is a grave charge, which, if found to be true, vitiates the verdict, requiring that it be set aside and a new trial awarded, not only on the question of damages, but also on the question of liability. Mere size of the verdict alone, however, is not sufficient, considered alone, to establish that it was the result of bias, passion or prejudice. In addition, there must have been some incident or occurrence at the trial, or error committed of such a nature as to engender bias, passion or prejudice, thereby allowing the conclusion that the verdict was the result of misconduct by the jury. Allen v. Bi-State Development Agency, Mo.App., 452 S.W.2d 288, 292 [8–10]. The trial court had the matter of excessiveness before it, but found no misconduct. No incident or occurrence at the trial has been pointed out upon appeal. And upon review in the transcript, we have found none. We will not now weigh the evidence and make a finding of bias, passion or prejudice.

■ The second part of this contention maintains that the verdict should be reduced to bring it into line with the "rule of uniformity". The injuries suffered by Mrs. Friend were in the right foot. She received a fracture of a second metatarsal bone, about mid-foot. A walking boot cast was applied June 12, 1968, and she was instructed to use crutches until she was able to bear full weight on the foot. Her physician authorized her to return to work July 22, 1968. From the time of the injury through the period of healing, she experienced pain and discomfort. When she was discharged on August 14, 1968, the doctor was of the opinion she suffered a five per cent permanent, partial disability of the right foot. The thing that primarily convinced the doctor of her disability was the location of the fracture. It involved the joint of the second metatarsal with the first metatarsal and there was a periosteal reaction on the lateral side of the joint base. At the time of trial, Mrs. Friend still complained of swelling of the foot and aching.

In tort actions the determination of the amount awarded is a matter primarily resting in the discretion of the jury since it involves the credibility of witnesses and the weight and value to be given their testimony on a fact issue. Once the verdict is

approved by the trial court, it is conclusive on appeal unless the award is either so excessive or so inadequate, that, coupled with other error committed at the trial, the appellate court can come to no other conclusion than that there was misconduct by the jury. Effinger v. Bank of St. Louis, Mo. App., 467 S.W.2d 291, 297 [5, 6].

Finding no error committed by the trial court, we affirm the judgment.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the judgment is affirmed.

BRADY, P. J., DOWD, J., and LACKLAND H. BLOOM, Special Judge, concur.