Robert NEWCOMB, Plaintiff/Respondent,

v.

ST. LOUIS OFFICE FOR MENTAL RETARDATION & DEVELOPMENTAL DISABILITIES RESOURCES [MR/DD], Third–Party Plaintiff/Appellant/Cross–Respondent,

v.

MISSOURI DEPARTMENT OF MENTAL HEALTH [DMH], Third Party Defendant/Cross–Appellant.

Nos. 62698, 62869.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 11, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 14, 1994.

Application to Transfer Denied
March 22, 1994.

Edward T. Liese, Erich V. Vieth, St. Louis, for St. Louis MR/DD.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Clate J. Baker, Asst. Atty. Gen., Springfield, for Mo. Dept. of Mental Health.

Daniel R. Devereaux, Christine A. Gilsinan, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

A jury in the Circuit Court of the City of St. Louis returned a verdict in favor of plaintiff, Robert Newcomb, in his suit for damages for personal injuries sustained in a fall on basement stairs of a building owned by defendant, St. Louis Office for Mental Retardation and Developmental Disabilities Resources (MR/DD), and occupied by third-party defendant, Missouri Department of Mental Health (DMH). MR/DD appeals from the judgment entered against it on the jury verdict, and DMH appeals from the judgment entered against it for contractual indemnity. We reverse.

MR/DD is a not-for-profit corporation responsible for the administration of special tax funds collected in the City of St. Louis. These funds are restricted to use in behalf of City residents who suffer from mental retardation or developmental disabilities. DMH is a department of the executive branch of the government of the State of Missouri established pursuant to Article IV, § 37(a) of the Constitution of Missouri.

On January 21, 1983, MR/DD and DMH entered into a contract entitled "Group Home Joint Venture Agreement," which provided generally for a cooperative project to acquire, develop, and operate group homes for persons suffering from mild or moderate mental retardation. Under the agreement, MR/DD promised to purchase, renovate, and equip a residential structure located at 2111–2115 Arsenal Street and DMH agreed to operate the group home pursuant to established policies and practices. DMH agreed to furnish necessary personnel and to be responsible for all costs of operation, including all maintenance and repairs of the building. Title to the property was held solely by MR/DD, but its only responsibility under the agreement was for capital or structural improvements. MR/DD reserved a right to enter the residence for inspection to ensure the premises were being kept in repair but only upon reasonable notice to DMH. The agreement provided for a one-year term automatically

renewable unless cancelled by either party upon the giving of six months notice.

In connection with the renovation of the 90–100 year-old building, MR/DD called upon the Urban League of St. Louis to furnish architectural services. The League hired George Everding for that purpose. Everding's cousin, Al Guise, Jr., served as construction manager on the project. MR/DD determined what work was to be done as part of the renovation and made the decision not to do anything in the basement because there was no anticipated use of that part of the building. In February, 1984, the renovation was substantially completed, and DMH approved and accepted the facility. From that time on, DMH was in sole possession of the residence. In April, 1984, the operation of the group home commenced.

Robert Newcomb was employed as a painter by DMH. He was assigned the task of painting portions of the residence. On July 16, 1984, while walking down the stairway to the basement where he had stored his paint, Newcomb fell when a stair tread came loose. After settling his claim for worker's compensation against DMH, Newcomb filed suit against MR/DD, the Urban League, Everding and Guise. In this suit, he alleged his injuries were caused by MR/DD's negligence in failing to maintain and repair the steps and in failing to warn him of their dangerous condition. MR/DD filed a third-party petition against DMH claiming a right of indemnification based upon DMH's contractual obligation to maintain and repair the premises. Prior to trial, defendant Guise obtained an order for summary judgment from which plaintiff has not appealed. The jury returned a verdict in favor of plaintiff and against MR/DD, the Urban League, and Everding. The jury also found in favor of MR/DD on its third-party petition seeking contractual indemnity against DMH. Plaintiff entered into a settlement with the Urban League and Everding. Judgment was then entered on the verdict against MR/DD and against DMH on the third-party claim.

On appeal MR/DD first argues that plaintiff failed to make a submissible case and therefore the trial court erred in overruling its post-trial motion for judgment notwithstanding the verdict.

On review when determining whether the plaintiff made a submissible case, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Hannah v. Mallinckrodt, Inc.*, 633 S.W.2d 723, 724 (Mo. banc 1982). However, for plaintiff to present a submissible case of negligence, the plaintiff must present substantial evidence of every fact necessary to establish the liability of the defendant; and, it is a judicial function to determine whether negligence can be inferred from the facts and whether the plaintiff's evidence establishes a submissible case. *Id.* In any negligence action, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty and that plaintiff's injury was proximately caused by defendant's failure. *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990). The existence of a duty is a matter of law and is thus a question for the court. *Bunker v. Association of Missouri Electric Cooperatives*, 839 S.W.2d 608, 611 (Mo.App.1992).

MR/DD maintains that the relationship between it and DMH was that of landlord and tenant and that as a landlord it had no duty to protect the tenant, DMH, or the tenant's invitees from injury caused by a defect in the demised premises. We agree.

The traditional elements of a landlord-tenant relationship are: (1) a contract, express or implied, between the parties, (2) the creation of an estate in the tenant, either at will or for a specified term, (3) a reversion to the landlord, and (4) the transfer of exclusive possession and control to the tenant. *Friend v. Gem International, Inc.*, 476 S.W.2d 134, 137–38 (Mo.App.1972). If these elements are present, no matter how the parties describe their relationship, the status of landlord and tenant exists. *Id.* at 137. In *Friend*, although the contract between the owner and the occupier of the property was termed a "license," the presence of the indices of a landlord-tenant relationship were sufficient to establish such a status for the purpose of determining the legal rights and obligations of the parties toward an invitee injured upon the premises. *Id.* at 138.

In the present case, each of the elements of a landlord-tenant relationship exists—a contract which creates an estate for one year in DMH with a reversion to MR/DD and a transfer of exclusive possession and control to DMH. Despite the fact they termed their agreement as a "joint venture," the respective rights and obligations of MR/DD and DMH toward Newcomb must be determined by the principles governing the relationship of landlord and tenant.

■ A landlord is not liable for personal injuries sustained by a tenant or a tenant's invitee. *Chandler v. Furrer,* 823 S.W.2d 27, 29 (Mo.App.1991); *Uelk v. Directory Distributing Assoc.,* 803 S.W.2d 632, 635 (Mo.App. 1991). The exceptions to this rule include situations where the landlord has knowledge of a dangerous condition not discoverable by the tenant and fails to make disclosure, where an injury occurs in a common area, and where the landlord is responsible for making repairs and negligently fails to do so. *Uelk,* at 635–36.

■ In his petition, Newcomb charged MR/DD with negligence in failing to maintain and repair the stairway and in failing to warn of a dangerous condition. The evidence clearly shows that MR/DD was under no obligation to maintain or repair the stairway which was within the exclusive possession and control of DMH. Newcomb does not contend that MR/DD had actual knowledge of a dangerous condition of the stairway. He contends instead that it was "reasonable to assume" the stair contained rotten wood and rusty nails because the building was over 100 years old. A landlord's duty to warn a tenant of a dangerous condition within the demised premises is based upon the landlord's superior knowledge of a danger not discoverable by the tenant. *Chandler,* at 29; *Uelk,* at 635–36. Nothing in the evidence shows that MR/DD knew or should have known more about the condition of the stair than DMH. Nothing about the appearance of the step prior to the accident indicated any danger. Indeed, the stairway had been utilized by Newcomb and other employees of DMH *without* incident for several months after DMH was in exclusive possession of the residence.

Newcomb did not submit his case to the jury under any of the exceptions to the general rule absolving the landlord from liability to the tenant's invitees injured by defects in the demised premises. Newcomb's verdict directing instruction, patterned after MAI 22.03, directed a verdict for plaintiff if the jury found MR/DD failed to maintain, repair, or warn of an inadequately secured stair about which it knew or should have known. The instruction did not require the jury to find that the unsafe condition of the stair was not known or not reasonably discoverable by DMH. Nor was there evidence to support such a submission. Under the contract, MR/DD had no duty to maintain or repair the stairway. We have no alternative but to conclude that Newcomb, an employee of the tenant in exclusive possession and control of the premises, failed to prove the existence of any duty on the part of the landlord to maintain, repair, or warn of defective conditions in the demised premises. The trial court erred in overruling MR/DD's motion for judgment notwithstanding the verdict. This renders moot DMH's appeal from the judgment on MR/DD's cross-claim for indemnification.

The judgment of the trial court on plaintiff's claim and the cross-claim is reversed.

GRIMM, P.J., and AHRENS, J., concur.