**Robin THOMPSON, Appellant,**

v.

**Victor I. TUGGLE and Francetta Tuggle, Defendants,**

**and**

**Glennco, Inc., Respondent.**

**No. WD 65576.**

Missouri Court of Appeals, Western District.

Feb. 7, 2006.

Michael R. Fletcher and Walter R. Simpson, Kansas City, MO, for Appellant.

John G. Schultz and Nikki Cannezzaro, Kansas City, MO, for Respondent.

Before SPINDEN, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Appellant Robin Thompson ("Thompson") appeals from a summary judgment granted in favor of Respondent Glennco, Inc. ("Glennco"), in the Circuit Court of Jackson County. Thompson argues two points on appeal. In Point I, Thompson argues the trial court erred in granting summary judgment in favor of Glennco, because a genuine dispute of material fact exists as to whether Glennco owed a duty to Thompson. In Point II, Thompson argues the trial court erred in granting summary judgment in favor of Glennco because a genuine dispute of material fact exists as to whether Glennco and co-defendants, the Tuggles, were joint venturers who were jointly and severally liable. For the following reasons, the judgment of the trial court is affirmed.

## Background

Glennco owned residential property ("the property") located at 4504 South Benton in Kansas City. On January 10, 2002, Glennco entered a lease agreement with Victor and Francetta Tuggle ("the Tuggles") for the property. The lease agreement outlined the terms under which the Tuggles possessed and rented the premises from Glennco. The lease agreement contained an addendum that prohibited the Tuggles, as well as any other member of the household or guest, from engaging in any illegal activity on or near the premises. The addendum expressly prohibited the unlawful discharge or unauthorized possession of firearms. The lease also required the Tuggles to insure their interest in the property and pay any taxes associated with the leased premises. The Tuggles were also responsible for all maintenance and repairs to the property and Glennco was not obligated to maintain the property. The Tuggles were permitted under the lease agreement to make improvements to the property with Glennco's consent. An addendum to the lease agreement gave the Tuggles an option to purchase the property for $54,000 with part of the previous rent applied to the purchase price. The Tuggles never exercised their option to purchase the property. The lease expressly entitled the Tuggles to possession of the property for the duration of the lease period.

On March 7, 2003, Charles Young, a minor child, accidentally discharged a loaded gun belonging to the Tuggles in the direction of a visitor, Thompson's nine-year-old son Devonte Thompson, striking him in the neck. As a result of the gunshot wound, Devonte Thompson died. The death was ruled accidental by the Kansas City Police Department.

Thompson filed an action against Glennco and the Tuggles for the wrongful death of Devonte Thompson in the Circuit Court of Jackson County. Thompson's amended petition alleged that the Tuggles were liable for Devonte Thompson's death on negligence grounds and that Glennco was liable for Devonte Thompson's death on negligence and vicarious liability/joint venture grounds. Glennco filed a motion for summary judgment, and following oral arguments on the motion, the trial court granted summary judgment in favor of Glennco. The court found that: (1) Glennco and the Tuggles were not joint venturers relating to the use of handguns, and (2) Glennco did not owe a duty to protect Devonte Thompson from dangerous conditions on the property because the Tuggles had exclusive possession and con-

trol over the property when the accidental shooting death occurred.

This appeal follows.

## Standard of Review

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). The review of a summary judgment is essentially *de novo*. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court initially. *Id.* The propriety of summary judgment is purely an issue of law, and an appellate court need not defer to the trial court's order granting summary judgment. *Id.* A defendant seeking summary judgment must establish:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to · support the movant's properly-pleaded affirmative defense.

*Id.* at 381.

## Point I

In Point I, Thompson argues the trial court erred in granting summary judgment in favor of Glennco, because a genuine dispute of material fact exists as to whether Glennco owed a duty to Thompson, in that the injury was foreseeable due to prior criminal history at the subject property and Glennco allowed a dangerous condition to exist.

In support of Point I, Thompson argues that during the time Glennco owned the property, there was a continual pattern of criminal activity and lawlessness on the premises, as evidenced by numerous calls to the Kansas City Police Department for intrusion alarms, disturbances, abandoned vehicles, drugs, assault, and armed robbery. Thompson claims that despite this prior criminal activity, Glennco did not adequately recognize the potential for criminal activity and reasonably respond with appropriate security precautions. Thompson argues that this criminal activity reported at the property created a duty to protect Devonte Thompson because it was reasonably foreseeable that other violent crimes could occur, including a visitor being injured by an act of violence. Thompson claims Glennco had at least a certain degree of control over the premises and breached its duty by failing to adequately screen potential tenants, conduct criminal background checks, prohibit possession of firearms or require that firearms be safely maintained, and maintain reasonable overall control over its tenants and property. Thompson argues that this breach of duty allowed an atmosphere of criminal activity to prevail at the property.

Thompson further argues that it was an issue of fact for the jury whether Glennco knew or should have known that a gun at a home where children are present created an unreasonable risk and may constitute a dangerous condition. Thompson claims that Glennco disregarded this known danger because it did not believe it was required to either prohibit unsupervised minors from handling guns or prohibit guns altogether and chose not to require the Tuggles to use a trigger lock or safely secure any guns on the premises out of the reach of children. Thompson concludes

that the reasonableness of Glennco's decision to disregard the known risk associated with the dangerous condition created by the unsecured handgun is, at a minimum, an issue for the jury, and the trial court erred in granting summary judgment in favor of Glennco.

■ "The general rule is that landlords are not liable for personal injuries received by a tenant or a tenant's invitees." *Richeson v. Sprinco, Inc.*, 931 S.W.2d 507, 508 (Mo.App. W.D.1996). "A landlord may be liable, however, if (1) the landlord has knowledge of a dangerous condition not discoverable by the tenant and fails to disclose that condition, (2) the injury occurs in a common area, or (3) the landlord is responsible for making repairs and negligently fails to do so." *Id.* at 508–09.

In the instant case, none of the exceptions to the general rule apply. The Tuggles' ownership of a gun was not a dangerous condition that Glennco knew about and failed to disclose. Furthermore, the accidental shooting death occurred inside the home as opposed to a common area, and the lease provided that the Tuggles, not Glennco, were responsible for all maintenance and repairs.

Thompson cites *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo.banc 1976), which reversed the dismissal of a negligence petition. The defendant in *Scheibel* kept a loaded shotgun in her house and the plaintiff was shot by a third person in the defendant's house. *Id.* at 287. The instant case is distinguishable from *Scheibel* for two different reasons. First, the defendant in *Scheibel,* unlike Glennco, had control over the premises because it was her residence. *Id.* at 287. Second, the defendant in *Scheibel* knew that the person who shot the plaintiff exhibited violent tendencies, but still kept her shotgun in a place where she knew or should have known that this person would use it so as

to create an unreasonable risk to the plaintiff. *Id.* at 290. In the instant case, there was no knowledge on Glennco's part that a person with violent tendencies would have access to the Tuggles' gun.

Thompson also cites *L.A.C. v. Ward Parkway Shopping Center Co., L.P.,* 75 S.W.3d 247 (Mo.banc 2002), in which a minor patron was raped at a shopping center. The plaintiff patron brought a negligence action against the owners and managers of the shopping center. *Id.* at 250. The Missouri Supreme Court reversed summary judgment in favor of the defendants, finding that the owners and managers of the shopping center owed a duty to business invitees to protect them from criminal acts of unknown third parties. *Id.* at 258–59. In *L.A.C.,* the shopping center had been the site of other violent crimes prior to the plaintiff patron being raped. *Id.* at 254. Thompson argues that the instant case is on point with *L.A.C.,* because there were several incidents of criminal activity at the property prior to the accidental shooting death of Devonte Thompson. The instant case is also distinguishable from *L.A.C.* for two reasons. First, the owners and managers of the shopping center had control over the premises, whereas Glennco did not have control over the living area in the instant case. Second, *L.A.C.* addressed the issue of whether a shopping center owed a duty of care to protect business invitees from criminal acts of unknown third parties, whereas the instant case concerns an accidental injury that was not a crime.

In the instant case, Glennco had no control over the property, despite being the owner, and had no knowledge of whether the Tuggles owned a gun or how the gun was stored. Furthermore, the prior criminal activity at the property is irrelevant to the issue of whether Glennco had a duty to protect the Tuggles' guests from acciden-

tal injuries inside the residence. Therefore, the trial court did not err by granting summary judgment in favor of Glennco on Thompson's negligence claim.

Point I is denied.

## Point II

■ In Point II, Thompson argues the trial court erred in granting summary judgment in favor of Glennco because a genuine dispute of material fact exists as to whether Glennco and co-defendants, the Tuggles, were joint venturers who were jointly and severally liable in that there existed an agreement, a common purpose, and a community of pecuniary interest.

■ *Eads v. Kinstler Agency, Inc.*, 929 S.W.2d 289, 292 (Mo.App. W.D.1996), provides that the essential elements of a joint venture are:

(1) an express or implied agreement among members; (2) a common purpose to be carried out by the members of the group; (3) a community of pecuniary interest in the common purpose; and (4) an equal voice, giving an equal right of control in the direction of the enterprise.

In support of Point II, Thompson argues that there was an agreement between the Tuggles and Glennco. Thompson claims that this element is supported by the fact that Glennco and the Tuggles signed an express contract regarding the sale and lease of the property. Thompson also argues this element is supported by the admissions of Glennco representative Stephen Summers ("Summers") in his deposition that the sale and lease agreement delineates the rights of each party.

Thompson argues that there was a common purpose to be carried out by the group. Thompson claims this argument is supported by Summers' admission in his deposition that the common purpose to be carried out among the members relative to the agreement was to effectuate the terms and conditions of the lease and sale of the property.

Thompson also argues that there was a community of pecuniary interest in the common interest among the members. Thompson argues this element is established by the fact that both members of the joint venture shared pecuniary interests in the property in that the Tuggles paid rent with an option to buy and Glennco collected rent.

Finally, Thompson argues that Glennco and the Tuggles had an equal right to a voice in the direction of the enterprise, which gave them an equal right of control. Thompson claims Glennco admitted that both Glennco and the Tuggles had an equal voice as to the direction and continuation of the lease or sale of the property. Thompson argues that although Glennco had no physical control over the property, Glennco still had a right of control by operation of law due to the terms of the agreement and Glennco's ownership of the property. Thompson claims that there was an understanding between Glennco and the Tuggles that both parties had a right to have their wishes respected regarding the property. Thompson argues that each party had their own assigned roles as to the property, and no showing of right to control the property over and above those assigned roles is necessary to establish this element.

Thompson concludes that Glennco has admitted sufficient facts through Summers' deposition testimony to establish a *prima facie* claim of liability based upon joint venture and that the trial court erred by granting summary judgment in favor of Glennco.

■ In order to form a joint venture, the parties must intend to create a contract of joint venture. *Ritter v. BJC*

*Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 387 (Mo.App. E.D.1999). "Indications of a joint venture include: actively participating and sharing in the profits, all parties having joint and several control, and having a duty to share the losses." *Id.* "Merely sharing an economic interest is not sufficient to form a joint venture. There must be some evidence of the parties participating and having control over the enterprise." *Id.* at 388.

In *Newcomb v. St. Louis Office for Mental Retardation & Developmental Disabilities Resources*, 871 S.W.2d 71, 72 (Mo. App. E.D.1994), the owner and operator of a group home entered into a contract entitled "Group Home Joint Venture Agreement." An employee of the group home operator sustained personal injuries when he fell after a stair tread came loose and the trial court entered judgment on a verdict in favor of the plaintiff and against the owner of the facility. *Id.* at 73. *Newcomb* held that the employee did not make a submissible case against the owner of the facility, because the operator of the group home was a tenant in exclusive possession and control of the premises and the judgment was reversed on appeal. *Id.* at 74. Despite the agreement being termed a "joint venture," all of the elements of a classic landlord-tenant relationship were present, and, therefore, "the respective rights and obligations of [the owner and the operator] toward [the employee] must be determined by the principles governing the relationship of landlord and tenant." *Id.* *Newcomb* provides that "[i]f these elements are present, no matter how the parties describe their relationship, the status of landlord and tenant exists." *Id.* at 73.

In the instant case, there was no evidence of either Glennco or the Tuggles having the intent to form a joint venture. Glennco and the Tuggles did not share any profits or losses. Glennco held title to the property and the Tuggles had physical control, but there was no joint or several control required to form a joint venture. The instant case is similar to *Newcomb*. Thompson seeks to describe the rental agreement with a purchase option between Glennco and the Tuggles as a joint venture so that Glennco can be held liable for the wrongful death of Devonte Thompson. However, just as in *Newcomb*, the agreement between Glennco and the Tuggles had all of the elements of a landlord-tenant relationship, so the rights and obligations of Glennco and the Tuggles toward Thompson must be determined by the principles governing landlord and tenant relationships. Because Glennco and the Tuggles had a landlord-tenant relationship and Glennco had no control over the property, the trial court did not err by granting summary judgment in favor of Glennco on Thompson's claim of liability based upon joint venture.

Point II is denied.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

SPINDEN, P.J., and HOLLIGER, J., concur.